hMICHAEL E. KIRBY, Judge.

STATEMENT OF CASE

These three defendants and a co-defendant, Larry Williams, were charged with possession of a stolen automobile having a value in excess of $500 on December 11, 2001. The defendants were arraigned and pled not guilty. Joseph Meyer was appointed to represent all four defendants. On January, 3, 2002, the four defendants withdrew their motions for a preliminary hearing. The trial court granted the motion of Larry Williams to sever his trial. On January 10, 2002, the two cases were tried to separate juries. These three defendants were found guilty as charged. Williams was also found guilty as charged. The court ordered pre-sentence investigations for all defendants.
*27 On March 11, 2002, the trial court sentenced Jarvis Thomas to five years incarceration under the About Face Program in Orleans Parish Prison pursuant La. R.S. 15:574.5. The court granted Thomas’ motion for appeal.
On April 10, 2002, the trial court sentenced defendants Clarkson and Patterson to three years incarceration and suspended the sentences. The defendants were placed on five years active probation with special conditions. The court granted the defendants’ motions for appeal.
| STATEMENT OF FACT
On November 24, 2001, Sergeant Michael Glasser and his partner Officer William McDade were traveling on Conti Street approaching North Claiborne Avenue when they observed the vehicle being driven by Jazzie Clarkson skirt past several waiting automobiles by entering the oncoming traffic lane. The officers followed behind the car, checked the license plate number, and learned that it was not registered to the car they were following. Suspecting that the vehicle may have been stolen they initiated a stop with the assistance of another police unit being driven by Detective Patrick Evans.
After the vehicle was stopped, the occupants of the car were removed. As noted, Jazzie Clarkson had been driving the car, and Jarvis Thomas and Carolin Patterson had been seated in the rear of the vehicle. Sgt. Glasser stated that the steering column had been defeated and there was no key in the ignition. A screwdriver was recovered from the back seat of the vehicle.
Sgt. Glasser contacted the owner of the vehicle who was unaware that her car had been stolen. She believed that her car was still parked in front of her apartment. At trial, the victim related that she did not give any of the defendants permission to use her car.
Detective Evans related that the ignition switch had been wallowed out and that the little plastic piece that one would grab to turn the ignition switch had been broken off. A photograph of the ignition switch was introduced at trial.
Detective Jason Gagliano, who was assigned to the auto theft division of the Seventh District, testified that the ignition switch in the victim’s vehicle had been forced while still intact. He related that the switch is constructed from a weak metal which can be broken easily. Once forced, he stated, one can use practically |3any instrumentality, such as a butter knife, a screwdriver, or a small key, to turn the ignition and start the car.
Jazzie Clarkson testified in her own behalf. She stated that on the evening in question, she and Carolin Patterson were going to the Bayou Classic and were walking on Canal Street when they observed the car. Clarkson was familiar with Jarvis Thomas from her neighborhood. He was driving the vehicle. Clarkson was not familiar with Larry Williams before that evening. The girls were asked if they wanted to ride and they agreed. Clarkson was asked to drive the car. She explained that the boys wanted to watch the other girls walking on Canal Street so they asked if she would drive. Clarkson stated that moments later the car was stopped by the police. She stated that the car was running and the interior light did not come on when she got in.
Larry Williams testified that on the evening of the Bayou Classic he saw his cousin, Jarvis Thomas, while at a party at his aunt’s house. Williams left the residence and stole the car using a flat head screwdriver and some vice grips. He returned and picked up Jarvis Thomas and the two went to the two girls’ house (evidently referring to the two female defendants). *28 He stated that he had not known them very long.
Williams stated that Jazzie Clarkson was driving the car that night. He stated that she wanted to drive and so he let her. He noted that the car was running when she got behind the wheel Williams testified that neither of the three defendants observed him starting the car during the evening and that he did not inform anyone that the car was stolen.

J¿ASSIGNMENT OF ERROR NUMBER 1 (Patterson & Clarkson)

Defendants Clarkson and Patterson contend the evidence was insufficient to support their convictions. In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). When the conviction is based on circumstantial evidence, La. R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979, 983 (La.1986).
La.R.S. 14:69 provides, in pertinent part: Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Neither defendant contends that the state failed to prove that the automobile had value or that it had been the subject of a theft. They contend, however, that the state failed to establish that they knew or had good reason to believe the automobile had been stolen. Patterson contends further that the state failed to establish that she possessed the automobile.
Jurisprudence from this court on the issue of the sufficiency of evidence establishing whether a defendant knew or should have the vehicle was stolen has varied under similar circumstances.
In State v. Wilson, 544 So.2d 1300 (La.App. 4 Cir.1989), the defendant was a passenger in a stolen vehicle. The cylinder door lock on the passenger side of the car had been pulled out and the steering column was broken on the left hand side | Kof the car. Pieces of broken plastic from the column and a screwdriver were on the floor of the car. The driver testified at Wilson’s trial that on the morning of the arrest, he had offered Wilson, an acquaintance of his, a ride to a shopping center. He stated that Wilson did not know that the car was stolen. He testified that when Wilson had asked him to whom the car belonged he told Wilson that the car belonged to a friend of his. He also testified that Wilson could not see that the steering column was broken from where he sat on the passenger side. This Court found that, notwithstanding this testimony, the facts that Wilson was a willing passenger in the car, that the steering column was broken and that the passenger door lock had been taken out were sufficient to prove that the he knew or should have known that the car was stolen.
This court relied on Wilson in affirming the conviction of the co-defendant in this case, Larry Williams, writing, “The defendant was sitting in the front seat where he could see that the steering column was defeated and no key was in the ignition.” State v. Wiliams, 2002-1100, p. 4, (La.App. 4 Cir. 9/04/02), 827 So.2d 671 (table).
In contrast to Wilson are two cases involving juveniles. In State In Interest of *29 H.N., 97-0982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, three juvenile defendants were adjudicated delinquent on a charge of unauthorized use of a movable. The arresting officer had received a call of shots being fired from a red Mazda RX7 and, after observing the automobile, he gave chase. The pursuit ended when the car hit a curb and all four occupants fled on foot. The three juvenile defendants were apprehended but the driver escaped. When inspected, the car had no damage to the steering column, but the motor was running even though there was no key in the ignition.
IfiThe juveniles testified that when they entered the vehicle they saw nothing to indicate the car was stolen and that they panicked and fled the vehicle after the driver told them to run because the car was stolen. This court reversed the convictions finding that there was no evidence that the defendants took or used the vehicle with .the knowledge that it was stolen saying:
Here the defendants denied knowing that the Mazda was stolen when they accepted the ride. There was no evidence of forced entry. There was no broken glass in the interior of the vehicle or damage to the steering column. There was a key in the ignition when the defendants entered the car. [According to the juveniles testimony.] The defendants testified that they fled because they panicked.
Id. 97-0982, p. 4-5, 717 So.2d at 668.
In State In Interest of O.B., 559 So.2d 31 (La.App. 4 Cir.1990) the two juvenile defendants were adjudicated delinquent on a charge of unauthorized use of a movable. The suspect vehicle was pursued by the police at high speed until it crashed into a parked vehicle. Four males exited the car and fled in different directions. O.B. was arrested hiding in some hedges a few blocks away. There was conflicting testimony from the officers as to whether one of the juveniles (W.L.) was the driver. The steering column had been defeated on the left hand side and there was broken plastic on the floor. There was a key in the ignition but it was not a car key. The owner of the car testified that the broken pieces of the steering column on the floor by the driver’s seat would not have been visible by one seated in the front passenger seat or seated in the rear, nor would the broken steering column be visible except to the driver.
The defendants testified that they accepted a ride from an acquaintance and did not know the car was stolen until it was stopped by police and that they panicked and fled the scene when the police stopped vehicle.
7 With respect to defendant Clark-son, it is certainly arguable that as the driver she could have been aware that there was no key in the ignition. There was no evidence to indicate that she had ever started the car. It was dark and without having looked to ensure that there was a key in the ignition, there is no reason to presume that she was aware that there was no key in the ignition. However, the conflicting testimony offered by Clarkson and Larry Williams would be grounds for a reasonable juror to reject her testimony as self-serving. Furthermore, a reasonable trier of fact could have found the conflicting testimony “was suspicious and indicative of criminal knowledge and/or intent.” State v. Jefferson, 97-2949, p. 7 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, 773. Accordingly, in light of the conflicting testimony, coupled with the fact that Clarkson was driving the car, we affirm the conviction of Clarkson.
As to defendant Patterson, as the rear seat passenger, there was nothing to *30 indicate she should have had good reason to believe that the car was stolen. There were no broken windows, the door locks were intact, the steering column, although defeated, had only negligible damage, and there was no testimony that she could have seen that there was no key in the ignition. Quite simply, even viewing the case from a light most favorable to the prosecution, there was insufficient evidence to establish that Patterson knew or should have known that the car was stolen. Therefore, we reverse Patterson’s conviction.

ASSIGNMENT OF ERROR NUMBER 2

Defendant Thomas argues that he received ineffective assistance of counsel by virtue of a conflict of interest inherent in his counsel’s representation. Representation of more than one defendant by the same attorney does not violate | «federal or state constitutional rights to adequate legal assistance unless such representation gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475, 484 (La.1983). When there has been ho objection to the multiple representation prior to or during trial, as here, the defendant must show that an actual conflict of interest adversely affected his attorney’s performance in order to establish a claim of ineffective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Lobato, 603 So.2d 739 (La.1992). That is, the defendant must prove both an actual conflict of interest and prejudice. State v. Montegut, 618 So.2d 883, 888 (La.App. 4 Cir.1993). An actual conflict exists if the defense attorney owes duties to a party whose interests are adverse to those of the defendant. The interests of the other party and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client. State v. Causey, 98-1946, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 287, 291.
Defendant argues that his interests and that of Jazzie Clarkson were adverse. Specifically, defendant avers that Clark-son’s testimony was against his interests as she testified that he had been operating the vehicle. It is apparent that defense counsel owed different allegiances to his two clients under the present circumstances. Clarkson, who was behind the wheel when the car was stopped, could only benefit by testifying that she had assumed control of the vehicle from Thomas while it was still running. However, in doing so, she also provided the jury a much stronger basis to conclude that Thomas either knew or should have known that the car was stolen. Without Clark-son’s testimony, the state’s case would have demonstrated only that Thomas was a rear passenger. The action of eliciting Clarkson’s testimony was clearly detrimental to Thomas.
9 The state contends that defendant’s claim would be properly considered in an application for post-conviction relief. However, where the record on appeal discloses sufficient evidence upon which to make a determination, a decision on the issue may be made in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983). In State v. Lobato, 603 So.2d 739 (La.1992) the Louisiana Supreme Court conditionally affirmed the defendant’s conviction and remanded the case for an evidentiary hearing on the issue of whether defendant was prejudiced by his counsel’s dual representation. The defendant’s co-conspirator in a drug smuggling operation was also represented by the same attorney. The issue to be considered on remand was whether the attorney’s dual representation prevented him from calling the co-conspirator at the defendant’s trial. Here, unlike Lobato, the co- *31 defendant did testify, and it is this testimony which supports the determination that Thomas was prejudiced. Accordingly, there is no evidence to be developed in a remand. Therefore, we reverse Thomas’s conviction.

CONCLUSION

We find the record evidence sufficient to affirm defendant Clarkson’s sentence and conviction. We vacate the remaining defendants’ sentences and convictions.
AFFIRMED IN PART; REVERSED IN PART.