EDWARD A. DUFRESNE, JR., Chief Judge.
 

 |2On October 28, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant, Bobby Johnson, with distribution of marijuana in violation of LSA-R.S. 40:966(A). At the arraignment, defendant pled not guilty. Thereafter, on April 13, 2005, the trial court heard and denied defendant’s motions to suppress evidence and identification.
 

 Defendant proceeded to trial before a twelve-person jury on September 12 and 13, 2007. After considering the evidence presented, the jury found defendant guilty as charged. On December 4, 2008, the trial court denied defendant’s motions for post-judgment verdict of acquittal and for new trial and then sentenced defendant to fifteen years imprisonment at hard labor. The State filed a multiple offender bill of information alleging that defendant was a second felony offender based on a 1999 conviction of aggravated battery. On February 12, 2009, after defendant admitted the allegations of the multiple bill, the trial judge vacated his original sentence and resentenced defendant as a second felony offender to fifteen years imprisonment at hard labor without benefit of probation or suspension of | ^sentence. Defendant’s oral motion to reconsider this sentence was denied. Defendant now appeals.
 

 FACTS
 

 On August 19, 2004, Deputy Gene Dixon of the Jefferson Parish Sheriffs Office was working an undercover detail in the Wood-mere subdivision, which was a high crime area. At trial, Deputy Dixon testified that after he arrived in the Woodmere area, he observed defendant, who was wearing a white muscle shirt and blue jean shorts, riding a bicycle in the 2400 block of Alex Kornman. He stated that he rolled down the passenger side window and asked defendant if he had any weed. Defendant came to the car by the passenger side window and asked “How many?” Deputy Dixon said “Four.”
 
 [1]
 
 Defendant walked away and talked on his cell phone. Defendant returned to the car and said he only had “three.” Deputy Dixon stated he would take it and defendant sold him three bags of marijuana. Deputy Dixon gave
 
 *252
 
 defendant a twenty dollar bill, and defendant gave him five dollars in change. Deputy Dixon left the area, described defendant to the agents, and told them about the transaction. Although the car is usually equipped with a video camera, the video recording equipment in the agent’s car malfunctioned at the time of the transaction.
 
 [2]
 

 Sergeant Corey Wilson of the Jefferson Parish Sheriffs Office was also part of the investigation and was located across the street from the transaction. Sergeant Wilson testified that he witnessed the transaction between the undercover agent and defendant and that the undercover agent purchased drugs from defendant, who was on a bicycle. He testified that he contacted Agent Joseph Ragas of the Jefferson Parish Sheriffs Office by radio and directed him to where |4defendant was located and what he was doing at the time in order for him to make an identification.
 

 In response to Agent Wilson’s request, Sergeant Ragas conducted a stop of defendant on Alex Kornman within minutes. Sergeant Ragas explained that when defendant saw the police car, he started riding off on the bicycle and came to another individual, set the bicycle down, and began talking to him. Sergeant Ragas testified that he spoke with defendant and had known him for probably over ten years. A field interview card was completed on defendant and the information matched an identification card defendant had in his possession. A Polaroid photograph was taken of defendant as well. A photograph was also taken of defendant along with the other individual he was with at the time so that attention would not be drawn to the narcotics investigation.
 

 About six days after the transaction, Agent James Aikman, who was with the Sheriffs Office at the time, presented Deputy Dixon with a lineup. Deputy Dixon identified defendant in a photographic lineup' as the person involved in the drug transaction in the 2400 block of Alex Korn-man.
 

 The vegetative material in the three plastic baggies was tested by Daniel Wag-uespack, who testified as an expert in the field of drug analysis identification. He testified that the material in the baggies was 3.6 grams of marijuana, a Schedule I controlled dangerous substance.
 

 ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
 

 In his first two assigned errors, defendant challenges the sufficiency of the evidence used to convict him. In assignment one, defendant contends that the State failed to prove his identity as the seller; and in his second assigned error, defendant asserts that the trial court erred in denying his motion for new trial based on insufficient evidence.
 

 15The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 State v. Ortiz,
 
 96-1609 (La.10/21/97), 701 So.2d 922, 930,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998);
 
 State v. Bailey,
 
 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55,
 
 writ denied,
 
 04-1605 (La.11/15/04),
 
 *253
 
 887 So.2d 476,
 
 cert. denied,
 
 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005).
 

 In the present case, defendant was convicted of distribution of marijuana. LSA-R.S. 40:966(A)(1) provides, in pertinent part, that it is unlawful for any person knowingly or intentionally to distribute a controlled dangerous substance classified in Schedule I. As such, to support a conviction of LSA-R.S. 40:966(A), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I.
 
 State v. Pierre,
 
 03-1306 (La.App. 5 Cir. 2/23/04), 869 So.2d 206, 211,
 
 writ denied,
 
 04-0959 (La.10/1/04), 883 So.2d 1006. Marijuana is a controlled dangerous substance classified in Schedule I. LSA-R.S. 40:964. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Ingram,
 
 04-551 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926.
 

 On appeal, defendant does not argue that the State failed to establish any of the essential statutory elements of his conviction, but rather contends the State failed to prove beyond a reasonable doubt his identity as the offender. Defendant specifically asserts that he was not the person who was engaged in the drug ^distribution. He argues that the actual seller was Patrick Stevens, the person who he was photographed with immediately after the sale and who also matched the clothing description.
 

 At trial, the State presented the testimony of two eyewitnesses in this case. Deputy Dixon, who was the undercover agent, testified that he purchased marijuana from someone riding a bicycle and wearing a white muscle shirt and blue jean shorts on Alex Kornman. Deputy Dixon testified that he gave defendant money, and in exchange, he received three bags of marijuana. He identified defendant in a photographic lineup about six days after the transaction and in court as the person who sold him the drugs on Alex Kornman.
 

 Deputy Dixon testified that it was daylight at the time of the transaction. He agreed that he was able to look at defendant’s face when defendant came to the car. Deputy Dixon also stated that he had a good opportunity to see defendant. He watched defendant as he approached the first time, as he walked around on his cell phone, as he approached the second time, and then while the agent drove off. He explained that defendant was no more than five feet from him. He testified that he had no doubt that defendant sold him drugs. He also testified that he had no difficulty in selecting defendant, who was a stranger, out of the lineup that included six photographs of people similar in appearance.
 

 Further, Sergeant Wilson was located across the street and witnessed the transaction between the undercover agent and defendant, who was on a bicycle. Sergeant Wilson identified defendant in court as the seller involved in this transaction. Sergeant Wilson stated that he never lost sight of defendant after the transaction. He testified that he contacted Agent Ragas by radio and directed him to where defendant was located and what he was doing at the time in order for him |7to make an identification. Sergeant Wilson testified that the transaction took place at approximately 3:40 p.m. and that he had a clear view of defendant.
 

 Sergeant Ragas testified that he was within two blocks of the 2400 block of Alex Kornman and stopped defendant within minutes on Alex Kornman after he was
 
 *254
 
 contacted by Agent Wilson. Agent Wilson had given Sergeant Ragas a physical description and a clothing description of the subject who was riding a bicycle and doing “little circles” in the street. Sergeant Ragas said that when defendant saw the police car, he started riding off on the bicycle and came to another individual, set the bicycle down, and started talking to him. A field interview card was completed on defendant and the information matched an identification card defendant had in his possession. A Polaroid photograph was taken of defendant as well.
 

 In the present case, the video recording equipment in the undercover officer’s car malfunctioned at the time of the transaction. However, the State presented eyewitness testimony and identifications. Positive identification by only one witness is sufficient to support a conviction.
 
 State v. Harris,
 
 07-124 (La.App. 5 Cir. 9/25/07), 968 So.2d 187, 193.
 

 On appeal, defendant points to several factors to support his argument that the evidence presented does not negate the reasonable probability of misidentification. He asserts that Deputy Dixon’s identification was not reliable because he had difficulty recalling details, and he further admitted that it was hard to keep track of all the people he interacts with. Defendant also points out that the identification from the photographic lineup happened six days after the transaction and after numerous other drug transactions had occurred. Additionally, since there was no videotape of the transaction, the undercover agent did not have the opportunity to view a videotape prior to making the identification. Defendant also | ^attacks Deputy Dixon’s degree of attention and notes discrepancies between the police report and the testimony regarding whether defendant had a bicycle or cell phone. Defendant further claims that Agent Wilson’s testimony was suspect because of the discrepancies in his testimony regarding whether the transaction took place on the passenger or driver’s side of the car.
 

 In the present case, the jury heard the testimony of the State witnesses regarding the details of the narcotics transaction as well as the circumstances surrounding the identification of defendant as the perpetrator. In addition, the jury heard the testimony of the defense witnesses. Sherry Johnson, defendant’s mother, and Kurbie Johnson, defendant’s sister, testified that they had never seen defendant ride a bicycle, except for when he was younger. Kurbie Johnson further testified that she saw her brother on the date of the transaction standing outside with Patrick Stevens on Alex Kornman. She was shown the photograph of defendant and Patrick Stevens. She testified that in the photograph she only saw Patrick with a cell phone. She admitted that she did not know what defendant was doing prior to the time she drove up and saw him standing with Patrick.
 

 After being presented with the testimony and any inconsistencies therein, the jury obviously chose to believe the testimony of the State witnesses identifying defendant as the individual who sold the narcotics to the undercover officer. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is- not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental |9due process of law.
 
 State v. Jones,
 
 08-20
 
 *255
 
 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
 

 Based on the foregoing discussion, we find that the State negated any reasonable probability of misidentification and proved beyond a reasonable doubt that defendant was guilty of distribution of marijuana. Accordingly, the arguments raised by defendant in his first two assigned errors are without merit.
 

 ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR
 

 By these two assignments, defendant challenges the sentence imposed. In assignment of error number three, defendant contends that his fifteen year sentence is excessive especially considering the quantity of marijuana is this case was less than four grams. In his fourth assigned error, defendant asserts that the trial court erred in denying his motion to reconsider sentence.
 

 Under LSA-C.Cr.P. art. 881.2(A)(2), a defendant “cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.” This Court has consistently recognized that this Article precludes a defendant from seeking review of an enhanced sentence to which the defendant agreed prior to stipulating to the multiple bill.
 
 State v. Moore,
 
 06-875 (La.App. 5 Cir. 4/11/07), 958 So.2d 36, 46.
 

 In the present case, defendant’s fifteen year mandatory minimum enhanced sentence was imposed in conformity with his plea agreement on the multiple bill. As such, he is barred from challenging the excessiveness of his multiple offender sentence on appeal.
 

 We further note that even if we chose to review the constitutional exces-siveness of defendant’s sentence, the sentence imposed was the mandatory minimum allowed by law. See LSA-R.S. 40:966(B) (3) and LSA-R.S. 15:529.1(A)(l)(a). It is presumed that a mandatory minimum sentence under the | inHabituaI Offender Law is constitutional.
 
 State v. Roberts,
 
 08-391 (La.App. 5 Cir. 10/28/08), 996 So.2d 1147, 1150.
 

 Based on the foregoing discussion, we find that the arguments raised by defendant in these assigned errors are without merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record reveals no errors which require corrective action.
 

 Accordingly, for the reasons set forth herein, defendant’s conviction and sentence are hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Deputy Dixon explained that "Four” was street terminology for wanting four $5.00 bags of weed or marijuana.
 

 [2]
 

 . It was stipulated that the tape of another matter two hours prior to the transaction worked.