EDWIN A. LOMBARD, Judge.
_JjThe defendant, C.D., a juvenile, appeals a judgment of the Juvenile Court for the Parish of Orleans, adjudicating him delinquent for the charge of distribution of heroin in violation of La.Rev.Stat. 40:966(A)(1). For the reasons provided below, we reverse the judgment of the trial court.

Procedural History

On June 80, 2010, C.D. was charged by delinquency petition with violating La.Rev. Stat. 40:966, relative to the distribution of heroin. An adjudication hearing was held on September 30, 2010. At the conclusion of the hearing, C.D. was found to be delinquent for the crime of distribution of heroin. The juvenile court held a disposition hearing on November 18, 2010, and C.D. was committed to the Department of Public Safety and Corrections for a period of time not to exceed one year, with the imposition of the sentence suspended pending appeal to this Court.
At the adjudication hearing, Officer Rafael Dobard, an assigned member of the 4th District Narcotics Unit of the New Orleans Police Department, testified that on or around June 28, 2010, he received information based on a confidential informant’s tip that heroin and unidentified pills were being sold from a house located at 2033 Wagner Street in New Orleans, near the Fisher Housing ^Development. At approximately 10:30 a.m., Officer Do-bard elected to set up a surveillance unit on that location to investigate any possible drug trafficking or exchanges at this location. Additional police officers were on standby to assist Officer Dobard in this surveillance action and were to act as the “take-down team” of any individuals who may have just engaged in a transaction from the house under surveillance.
During the surveillance period, Officer Dobard testified that he observed one or two transactions taking place wherein unknown individuals would walk up to the porch on 2033 Wagner Street, engage in brief conversation with a black male with a brown-skinned complexion and wearing a black t-shirt and black shorts. Officer Do-bard could view the approaching individuals and the black male exchange currency for an item, but was unable to determine the denomination of currency or the exact product being exchanged. Officer Dobard was using binoculars during this surveillance of the 2033 Wagner house.
*1221 In the early afternoon, Officer Dobard observed a black female walking up to 2038 Wagner and meeting with the black male wearing black shorts and a black t-shirt. The two individuals walked to the side of the house, where the black male moved his hand into his “crotch” area to retrieve an item. The black female gave him currency for the item. The black female then returned to her vehicle and drove away from the residence.
Officer Dobard notified the standby officers of what he believed to be a narcotics transaction by describing the black female and her vehicle. Officer Dobard testified that he viewed her driving off with the use of binoculars, and did not see any other person in the vehicle with her. Members of the standby team stopped the black female, later determined to be Mary Charles. Two detectives | .¡observed Ms. Charles in possession of a foil pack of heroin that she attempted to throw away. After a field test concluded that the seized item was heroin, the standby team notified Officer Dobard that they seized heroin from Ms. Charles and placed her under arrest.
At this point, Officer Dobard said that he left the surveillance location to secure a search warrant for the 2033 Wagner Street house, and that another officer maintained surveillance during his 30-45 minute absence. At approximately 4:06 p.m., the officers returned to the residence to execute the search warrant. Officer Dobard was part of this police team returning to the house, and while there were individuals in the house at 2033 Wagner, he did not see the black male wearing black shorts and a black t-shirt who was engaging in the transactions he had viewed earlier during surveillance. Officer Do-bard testified that he came out of the house and saw the black male now across the street from 2033 Wagner, and that the person was now wearing a yellow, black, and white plaid shirt and blue jeans. The person identified by Officer Dobard was C.D. C.D. was placed under arrest, and one hundred and thirty-eight dollars were seized from his person as evidence. No drugs or drug contraband was seized from his person. Other individuals, such as the confidential informant or Ms. Charles, were not provided the opportunity by Officer Dobard or any other police officers to identify C.D.
Following the state’s additional police witnesses, who testified as to the arrest of Ms. Charles, defendant moved for acquittal, arguing that only Officer Dobard had identified C.D. as the black male making alleged drug transactions at 2033 Wagner Street, and that the state had presented no evidence tying Ms. Charles’ arrest and possession of heroin to C.D. The trial court denied defendant’s motion, and the defense called C.D.’s mother, K.D., as their first witness.
_JjThe defendant’s mother testified that C.D. was helping her move during the day, and that he had only left her to go to a house known as “the candy lady’s house” on Hendee Street, a house which was across the street from where she was moving from. K.D. testified that she did not see her son go to 2033 Wagner Street. She further testified that C.D. was taken from the “candy lady’s” house and brought to Wagner Street by the police, where they then arrested him.
The defense then called Annaise Esteen, who lives at 2033 Wagner Street and was arrested on June 28, 2010. Ms. Esteen testified that she had pled guilty to possession of a stolen firearm and possession of “pills” stemming from this search. Ms. *1222 Esteen testified that she knows C.D. from the neighborhood, but that C.D. has never been to her house or porch, and that she had never invited C.D. to her house. Ms. Esteen further testified that a different individual, who looks similar to C.D., was selling on her porch. She did not say anything to this individual standing on her porch. She described this man as having a “red” skin complexion and a chipped tooth.
James Baker testified that he was also at the “candy lady’s” house and was arrested at the same time as C.D. Mr. Baker said that he never saw C.D. go to Wagner Street.
C.D. then took the witness stand and said that he was arrested because “they thought I looked like somebody.” When he was arrested, he told police they had the wrong person. He denied being on Wagner Street at any time on June 28, 2010. He testified that he was arrested at the “candy lady’s house” and taken to Wagner Street. C.D.’s mother once again took the stand, and testified that a man named “Earnest” was probably the individual that the police and others around the ^neighborhood confuse her son with. She described “Earnest” to be “red” in skin tone.
Following closing arguments, the trial court found C.D. to be delinquent for the charged offense of distribution of heroin. The trial court sentenced C.D. to one year in the Department of Public Safety and Corrections, but suspended imposition of the sentence pending this appeal. C.D. then brought forth this timely appeal.

Assignments of Error

C.D.’s sole assignment of error on appeal is that the State failed to meet its burden of proof at trial. C.D. argues that the evidence offered by the prosecution was insufficient to establish beyond a reasonable doubt either the elements of distribution of heroin or his identity as the offender.

Law and Analysis

In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.Code. art. 883. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous than the standard of proof required in a criminal proceeding against an adult.” State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93). When a conviction is based on circumstantial evidence, La.Rev.Stat. § 15:438 provides that such evidence “must exclude every reasonable hypothesis of innocence.” State v. Thomas, 2002-1523, p. 4 (La.App. 4 Cir. 2/5/03), 840 So.2d 25, 28; State v. Langford, 483 So.2d 979, 983 (La.1986). As a court of review, we grant great deference to the juvenile court’s credibility determination and assessment of witness testimony. State in the Interest of W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61.
|fiIn evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This Jackson standard has been held to be the clear standard of review for Louisiana appellate courts by the Louisiana Supreme Court. State v. Brown, 2003-0897 (La.4/12/05), 907 So.2d 1, 18. This standard of review is applicable in juvenile delinquency cases. State in the *1223 Interest of C.B., 2009-1114, p. 5 (La.App. 4 Cir. 12/16/09), 28 So.3d 525, 527.
In addition, La. Const, art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979). In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. State in the Interest of T.C., 2009-1669, p. 2 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260.
Heroin is a Schedule I opiate derivative. La.Rev.Stat. 40:964(B)(11). To support a conviction under La.Rev.Stat. 40:966(A)(1), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I. State v. Johnson, 09-611, p. 5 (La.App. 5 Cir. 1/26/10), 32 So.3d 250, 253.
In the matter sub judice, we find tíj*t the prosecution clearly failed to pres-envVvidence beyond a reasonable doubt that C.D. was the individual who distributed |7heroin to Mary Charles. Therefore, we reverse the judgment of the juvenile court and vacate the sentence imposed. Defendant argues that the state failed to present evidence beyond a reasonable doubt identifying C.D. as the offender, and we agree. The state has presented no evidence beyond the testimony of Officer Dobard that identifies C.D. as the individual selling heroin from 2033 Wagner Street.
“When a key issue at trial is whether the defendant was the perpetrator of the crime, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt.” State v. Bright, 1998-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147; see also State v. Brady, 414 So.2d 364, 365 (La.1982). The state presented no evidence of any relationship that C.D. had with anyone living on Wagner Street, such that C.D. could find a location to change clothes from a black t-shirt and black shorts into blue jeans and a yellow-white plaid shirt. The state has presented no evidence that C.D. knew anyone across the street from 2033 Wagner, provided no explanation as to how C.D. could have left a house under surveillance unnoticed, and appear in completely different clothing across the street.
The lone identification by Officer Do-bard of C.D. as the seller of heroin does not negate every reasonable probability of misidentification, especially given C.D.’s different clothing, the lack of drugs on his person, and his lack of connection to this part of the neighborhood and the 2033 Wagner residence. Although eye witness testimony alone can be sufficient evidence to satisfy the State’s burden, Louisiana jurisprudence has recognized that there are instances in which “numerous eccentricities, unusual coincidences and lack of corroboration” make such testimony so unreliable that even a reasonably pro-prosecution rational |sfact finder must have a reasonable doubt about the identification. State v. Woodfork, 1999-0859, p. 5 (La.App 4 Cir. 5/17/00), 764 So.2d 132, 135; quoting State v. Mussall, 523 So.2d 1305, 1311 (La.1988). In this matter, any rational trier of fact, after viewing all of the evidence favorably to the prosecution, must have a reasonable doubt as to the defendant’s guilt.
The state argues that while the front of the 2033 Wagner house was under surveil *1224 lance, the other entrances were not, and the state thus hypothesizes that C.D. could have left the back of the house and changed clothes in an unknown location. The state provided no evidence at trial in support of this theory, and we find it to be without merit. The state provided no evidence concerning the various entrances and exits of the house, such as surveillance video, maps, or the like. Furthermore, if C.D. was found across the street, this would undoubtedly require him, at some point during the surveillance, to walk past the front of 2033 Wagner, where surveillance was set up, to even arrive across the street.
The Jackson v. Virginia standard of review specifically requires that the appellate court must determine that the evidence was sufficient to convince a rational trier of fact “that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 2000-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)). When a conviction is based on circumstantial evidence, La.Rev.Stat. 15:438 provides that such evidence “must exclude every reasonable hypothesis of innocence.” State v. Thomas, 2002-1523, p. 4 (La.App. 4 Cir. 2/5/03), 840 So.2d 25, 28; State v. Langford, 483 So.2d 979, 983 (La.1986).
In this matter, no individuals other than Officer Dobard had at any point identified C.D. as the offender distributing heroin from 2033 Wagner Street, and he | anever even viewed C.D. at this address.[1] Without even having to consider the testimony of James Baker and Annaise Esteen, who deny that C.D. was the individual selling heroin at 2033 Wagner, we conclude that the state has not excluded every reasonable hypothesis of innocence. Langford, supra.
In addition to failing to account for C.D.’s location and change of clothes, the state failed to identify C.D. as the seller of heroin at the scene of his arrest. Only a few hours before C.D.’s arrest, Officer Do-bard and his team had arrested Mary Charles, who according to the testimony of her arresting officers at the adjudication hearing, was in possession of heroin. Officer Dobard and his narcotics team, having arrested Ms. Charles, could have easily had her conduct an identification as to who sold her the heroin, but elected not to do so. The fact that the police did not even attempt to have Ms. Charles identify C.D. or anyone else as her seller speaks volumes. The trial court committed manifest error in finding that the state presented evidence beyond a reasonable doubt identifying C.D. as the seller of heroin at 2033 Wagner.

Conclusion

The state clearly failed to present sufficient evidence beyond a reasonable doubt identifying C.D. as the person who distributed heroin to Mary Charles or anyone else from 2033 Wagner Street on June 28, 2010. The state failed to prove beyond a reasonable doubt that C.D. was properly identified as the offender. Officer Do-bard’s conclusion that C.D. was the perpetrator is not supported by any evidence provided by the State.
1 inOur review of the facts as a whole reveal that the trial court was clearly *1225 wrong in determining that the state had proven the identification of C.D. beyond a reasonable doubt. No other persons identified C.D. as the seller of heroin. The police inexplicably failed to have the arrested female in possession of heroin identify her seller. C.D. had no drugs or drug contraband in his possession. The state provided no evidence or explanation regarding C.D.’s appearance in completely different clothing than the person viewed by the police under surveillance as allegedly selling narcotics. The adjudication of delinquency for C.D. for the charged offense of distribution of heroin is reversed, and the sentenced imposed is vacated.
REVERSED

. The Supreme Court of the United States has stated that "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (in particular, authorities cited by the in footnote 6 of the opinion).