DANIEL L. DYSART, Judge.
Iiln this appeal, the juvenile, A.H., appeals the judgment of the Juvenile Court for the Parish of Orleans adjudicating him delinquent after finding he committed the offense of simple robbery. Specifically, A.H. argues that that juvenile court erred in adjudicating him delinquent because the evidence adduced at trial was insufficient to sustain the adjudication, and that the juvenile court erred in shifting the burden of proof to the defense before rendering a verdict. For the reasons set forth below, we affirm.

*1205
FACTS AND PROCEDURAL HISTORY

The State filed a delinquency petition charging A.H. with violating La. R.S. 14:65, simple robbery. On June 28, 2011, the juvenile court held an adjudication hearing.
At the adjudication hearing, Officer Pearson testified that she was working on March 31, 2011, when a complainant came into the police station at 12:47 a.m. and stated that he was just robbed a few blocks from the station at the corner of Burgundy St. and Pauline St. The complainant indicated that he was robbed by three young men, two wearing dark clothing and one wearing a blue shirt with a yellow logo on it. After obtaining the description, Officer Pearson proceeded to |2the area where the robbery occurred and canvassed the area, looking for the perpetrators.
Officer Pearson observed three individuals matching the description and when she headed in their direction, the individuals ran. Officer Pearson attempted to follow them, but lost sight of them for a short time. Officer Pearson continued searching and about a minute after losing sight of the three individuals who ran, Officer Pearson found one of them walking alone in the 700 block of Gallier St. Officer Pearson requested that the suspect, A.H., approach her police vehicle. Officer Pearson asked A.H. his age and whether or not he lived in the area. Officer Pearson indicated that the complainant arrived and identified A.H. as one of the perpetrators at 1:00 a.m., at which time A.H. was placed under arrest.
Next, the State called Jon Akins. Mr. Akins testified that on March 31, 2011, he was robbed. Mr. Akins stated that he was approached by three young black males, knocked off his bike, and had money taken from him, between five and ten dollars. Mr. Akins indicated that the description he provided to the police was that two of the males were tall, maybe a little over six foot, kind of slim, wearing dark clothes and the other was heavier set and wearing a blue pullover or polo kind of shirt with a little bit of white on the crest and “dark shorts of [sic] pants.” Mr. Akins testified that on the night of the robbery, about fifteen minutes after the robbery, he positively identified A.H. as the person who took his money during the robbery.
During the hearing, Mr. Akins further positively identified A.H. as the perpetrator. Mr. Akins stated that A.H. was wearing a blue polo shirt and dark jean shorts the night of the robbery. Mr. Akins identified the clothing retrieved from A.H. the night he was arrested, State Exhibit Number 1, as the clothing the | ^perpetrator was wearing the night he was mugged. Specifically, Mr. Akins testified, “The pants look about right. Yeah. The shoes I wasn’t sure, I really wasn’t paying attention to his feet. But the polo shirt matches.”
A.H. testified that on the date in question, his father dropped him off at his grandmother’s house, he rested for a bit, and then showered. A.H. stated he called his mother because he wanted to see her. A.H. testified that his mother arrived between 12:00 a.m. and 12:30 a.m. They ate chicken salad sandwiches and talked for a while, then left his grandmother’s house between 12:30 a.m. and 12:50 a.m. A.H. testified that after they arrived at his mother’s house, he logged on to the computer and his mom went into the back room. Thereafter, A.H. stated that he decided to walk to the store between 12:55 a.m. and 1:00 a.m. because he was hungry. A.H. testified that he did not tell his mother where he was going because it was after curfew. A.H. noted that he had $7.00 left from the $10.00 bill his father gave to him earlier.
*1206 When questioned by the juvenile court regarding the time frame for the evening, A.H. stated that he did not exactly remember what time everything occurred because he was not really paying attention. Then, A.H. claimed that he received a text message from his girlfriend at 12:25 a.m. as he was leaving his grandmother’s house and getting into his mother’s vehicle. A.H. stated that it took about 10 to 15 minutes to get from his grandmother’s house to his mother’s house. A.H. testified that he logged onto the computer for five minutes, then decided to go look for a store to get a snack as there was no food in the house. A.H. stated that he did not tell anyone where he was going.
A.H. testified that the first store he approached was closed, so he kept walking. Shortly thereafter, a police officer pulled in front of him and questioned |4him. A.H. stated that he did not run from the police, and that he had never been arrested before.
The juvenile court requested A.H.’s cell phone record showing when the text message was received on the night in question. A.H. stated that he was not able to obtain a cell phone record from Boost, his cell phone provider. At that point, the juvenile court determined that no further delay was necessary and adjudicated A.H. delinquent, finding he committed the offense of simple robbery. The juvenile court placed A.H. on supervised probation. A.H. subsequently filed this appeal.

STANDARD OF REVIEW

In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 883. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous then the standard of proof required in a criminal proceeding against an adult.” State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93); State in the Interest of G.M., 617 So.2d 219, 221 (La.App. 5 Cir. 4/14/93). As a court of review, we grant great deference to the juvenile court’s factual findings, credibility determinations, and assessment of witness testimony. State ex rel. W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61, writ denied, 2009-1129 (La.1/22/10), 25 So.3d 139.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard of review is applicable [¡¡in juvenile delinquency cases. State in the Interest of T.E., 2000-1810, p. 4 (La.App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const, art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. “While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.” State in the Interest of D.R., 2010-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930. (Emphasis in the original.). Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979); State ex rel. E.D.C., 39,892 (La.App. 2 Cir. 5/11/05), 903 So.2d 571; State ex rel. T.W., 2009-532 (La.App. 3 Cir. 10/7/09), 21 So.3d 465; and State in *1207 the Interest of S.S., 557 So.2d 407 (La.App. 4 Cir.1990). In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.

DISCUSSION

In the first assignment of error, A.H. alleges that the court erred in adjudicating him delinquent as the evidence adduced at trial was insufficient to sustain the adjudication.
Simple robbery is defined as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.” La. R.S. 14:65.
lfiA.II. argues that the court’s request that A.H. produce his cell phone record indicates that the court clearly had doubt as to whether or not A.H. was the actual person who committed the offense. This argument is spurious and ignores the trial court’s statement that A.H. was placed on the stand to disprove what the prosecution had already proven. The trial court’s own words refute A.H.’s argument.
Mr. Akin testified that A.H. was the individual who took five to ten dollars from him after Mr. Akin was knocked off his bike by A.H. and two other individuals. Thus, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have adjudicated A.H. delinquent, finding he committed the offense of simple robbery beyond a reasonable doubt.
Next, A.H. argues that the juvenile court erred in imposing a burden on A.H. to prove its theory of defense. A.H. argues that the prosecution bears the burden of proving every element of the offense beyond a reasonable doubt. Again, A.H. argues that in requesting that A.H. provide his cell phone records, the court im-permissibly shifted the burden to A.H. A.H. notes that only in the case of an affirmative defense, such as intoxication or insanity, is the defendant required to prove the existence of the condition at the time of the offense. A.H. argues that he did not set forth an affirmative defense, but simply negated the allegation by the State that he committed the offense of simple robbery.
First, A.H. states that the defense elicited testimony from Mr. Akins that he was robbed by someone wearing jean shorts stopping just below the knee. State Exhibit Number 1, A.H.’s clothing from the night in question, contain a pair of full length jeans. However, A.H. ignores the entirety of Mr. Akins’ testimony. Mr. Akins testified that the perpetrator was wearing a blue pullover, polo kind of shirt |7and “dark shorts of [sic] pants.” Later, Mr. Akins states that the perpetrator was wearing “dark jean shorts.” When asked to identify State Exhibit Number 1, Mr. Akins, replied, “[t]he pants look about right.” When asked by counsel for A.H. whether the person he saw was wearing shorts which stopped below the person’s knee, Mr. Akins responded, “I believe so. They might have been a little bit longer.” Mr. Akins did not testify that the individual was definitely wearing jean shorts which stopped just below the knee. Further, when reviewing State Exhibit Number 1, Mr. Akins testified, “[b]ut the polo shirt matches.”
Next, A.H. points to Officer Pearson’s testimony. A.H. argues Officer Pearson did not put in her report that A.H. was one of the three individuals she initially saw that fit the description of the perpetrators and that ran from her, that Officer Pearson did not see A.H. sweating, and that A.H. cooperated with Officer Pearson. *1208 However, Officer Pearson testified that A.H. was one of the individuals she observed running. And Officer Pearson testified that only a minute passed between the time the three individuals took off running and she the time she located one of them, namely A.H.
“When a key issue at trial is whether the defendant was the perpetrator of the crime, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt.” State in the interest of C.D., 2011-0121, p. 7 (La.App. 4 Cir. 6/29/11), 69 So.3d 1219, 1223, citing State v. Bright, 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147. Therein, an officer identified C.D. as the seller of narcotics. State in the Interest of C.D., 2011-0121, p. 3, 69 So.3d at 1221. The lone identification was given by an officer who observed a narcotics sale at 2033 Wagner by an individual in a black t-shirt and black shorts. Id., p. 2, 69 So.3d at 1221. The residence |8remained under surveillance by another officer for thirty to forty-five minutes while the officer obtained a warrant. Id., p. 3, 69 So.3d at 1221. After the warrant was executed, the officer exited the residence and observed C.D. across the street. Although C.D. was wearing blue jeans and a yellow-white plaid shirt, the officer questioned C.D. and eventually placed him under arrest for distribution of narcotics. Id. In overturning the conviction, the court noted that no explanation was offered as to how C.D. managed to change clothing and appear on the opposite side of the street without being detected. Further, the court noted that no drugs or contraband were located upon C.D., C.D. lacked a connection to the residence at 2033 Wagner. Id., p. 7, 69 So.3d at 1223. A resident of 2033 Wagner testified that she knew C.D. from the neighborhood, but that C.D. had never been to her home or porch. Id., p. 4, 69 So.3d at 1222. While noting that eye-witness testimony alone can be sufficient evidence to satisfy the State’s burden, the court found the lone identification insufficient. Id., p. 7, 69 So.3d at 1223. The court reversed the conviction. Id., p. 10, 69 So.3d at 1225.
Unlike C.D., A.H. was observed in the same vicinity of the robbery, in the same color and type of shirt as the perpetrator of the robbery, within minutes of the robbery. A.H. possessed $7.00 and Mr. Akins alleged that between $5.00 and $10.00 was taken during the robbery. While Mr. Akins did not recall with certainty whether A.H. wore jean shorts or full-length jeans, Mr. Akins positively identified the shirt A.H. was wearing as the same shirt his perpetrator was wearing. Further, Mr. Akins positively identified A.H. as the perpetrator of the robbery on the night of the robbery, as well as in court. The State negated any reasonable probability of mis-identification in carrying its burden of proof beyond a reasonable doubt that A.H. committed the offense of simple robbery.
1 flNext, A.H. argues that he negated the allegation that he committed the' robbery by eliciting the time of the offense from the officer and contrasting that with his testimony of his whereabouts on the night in question. However, the trial court noted A.H.’s timeline was inconsistent. A.H. testified several times that his mother arrived at his grandmother’s house between 12:00 a.m. and 12:30 a.m. and they ate chicken salad sandwiches and talked, then he left his mother and grandmother alone while he went to pack his uniform for school the next day. Then, A.H. stated they left his grandmother’s house to go to his mother’s house at 12:25 a.m. The juvenile court noted the inconsistencies throughout A.H.’s story and then stated that there was a positive identification from the victim and the State had proven *1209 its case. While the juvenile court was going to allow A.H. to submit the cell phone records, the juvenile court never stated that the State had not met its burden of proving A.H. committed the offense of simple robbery beyond a reasonable doubt. Granting great deference to the juvenile court’s factual findings, credibility determinations, and assessment of witness testimony, we find no error in the juvenile court’s adjudication as the record evidence as a whole furnishes a basis for the adjudication.

ERRORS PATENT

Our review of the record in this case reveals one error patent. In State in the Interest of A.H., 2010-1673, p. 9 (La.App. 4 Cir. 4/20/11), 65 So.3d 679, 685, we determined that conducting an error patent review in juvenile delinquency cases was warranted.
La. Ch.C. art. 844 provides that the petition utilized to commence a juvenile delinquency proceeding must be verified. The petition utilized to commence the proceedings against the A.H. herein is unverified. However, in State in the Interest of A.H., we found that the prosecution of A.H. ratified the unverified petition. State in the Interest of A.H., 2010-1673, p. 9, 65 So.3d at 685. Additionally, the Supreme Court has noted that the proper remedy for a lack of a signature on a petition is a motion to quash. If the motion is not filed, the error is waived. State v. White, 404 So.2d 1202, 1205 (La.1981).
Thus, while our review determined that the State failed to obtain a verification of the petition, we find that the prosecution of A.H. ratified the unverified petition. Further, A.H. failed to file a motion to quash the petition. Therefore, we deem the error to be harmless.

CONCLUSION

Accordingly, we affirm the adjudication of delinquency for the offense of simple robbery.

AFFIRMED