# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-397

## STATE OF LOUISIANA IN THE INTEREST OF R.R.B.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 33903
HONORABLE CYNTHIA CLAY GUILLORY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, John E. Conery, and Candyce G. Perret, Judges.

**ADJUDICATIONS AFFIRMED.**
**DISPOSITIONS AFFIRMED AS AMENDED.**

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 6547**
**Lake Charles, Louisiana  70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **R.R.B.**


**Honorable Stephen C. Dwight**
**District Attorney**
**Dale Lee**
**David S. Pipes**
**Assistant District Attorneys**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**CONERY, Judge.**

On February 2, 2021, the State charged R.R.B. (born June 15, 2007) with second degree murder, a violation of La.R.S. 14:30.1, and inciting to riot, a violation of La.R.S. 14:329.2. The juvenile court adjudicated R.R.B. delinquent for both charged offenses and thereafter rendered dispositions of secured placement for seven years without benefit of parole, probation, or suspension of sentence for each offense. R.R.B. timely appealed. For the following reasons, we affirm R.R.B.'s adjudications, amend the dispositions imposed, and affirm the dispositions as amended.

### FACTS AND PROCEDURAL HISTORY

This matter stems from an altercation between two juvenile groups on the evening of January 23, 2021 at a Lake Charles Walmart. The record indicates that earlier that afternoon, C.N. and two friends were at a Lake Charles-area movie theater where they encountered a group of seven girls, including the victim, M.L.[1] (M.L.'s group). The two groups exchanged "words." C.N. contacted R.R.B. to inform her about the presence of M.L.'s group. C.N.'s group then left the theater, walking first to a nearby Academy sporting goods store, then to Walmart.

Although C.N. and the two friends later returned to the theater, they ultimately again travelled to Walmart where they were joined by R.R.B., forming a four-person group (R.R.B.'s group). M.L.'s larger group also arrived at Walmart and stood outside calling for R.R.B. to come outside and fight due to an ongoing dispute between R.R.B and another member of M.L.'s group. R.R.B. remained in the store

---

[1] Although La.R.S. 46:1844(W)(1)(a) indicates that the deceased victim's name may be disclosed, we address all minors involved in this sealed juvenile matter pursuant to Uniform Rules—Courts of Appeal, Rule 5-2.

and, along with her friends, unsuccessfully searched for mace. Finding none, R.R.B.'s group armed themselves with folding knives they stole from a Walmart display area. R.R.B.'s group found a spot in the store where they began to charge C.N.'s telephone. As the telephone charged, a friend called C.N. and informed her that a girl in M.L.'s group was streaming on Instagram Live[2] and indicating that they wanted to fight R.R.B.'s group.

M.L.'s group ultimately entered Walmart and located R.R.B.'s group. M.L. advanced on R.R.B. with raised fists as the remainder of R.R.B's group backed away. Although M.L. and R.R.B. traded blows, R.R.B. did so with a knife in hand and stabbed M.L. in the chest with the knife R.R.B. had stolen immediately before the incident. M.L. was unarmed.

Sergeant Christopher Ryan of the Calcasieu Parish Sheriff's Office (CPSO), was working an off-duty security detail at the store at the time of the stabbing. He was alerted to the area by the sound of breaking glass. As he travelled in the direction of the sound, he saw the girls emerging from the aisle. Sergeant Ryan began running toward them when he saw that they were fighting. Although the girls "scattered" at his approach, he stopped M.L. when he saw that she was bleeding. He helped her to the floor, assessing her condition and discovering that she could no longer speak. Sergeant Ryan called for further assistance and rendered aid. M.L. became unresponsive at the scene.

M.L. was pronounced dead later that evening after being taken to the hospital. Dr. Terry Welke, forensic pathologist with the Calcasieu Parish Coroner's Office, determined M.L.'s cause of death to be a stab wound to the trunk and that M.L. had

---

[2] The parties presented both Walmart security footage and Instagram videos into evidence.

sustained a pierced left lung. The knife used in the stabbing was located at the scene and taken into evidence.

The record establishes that after the girls fled Walmart, two of the girls from R.R.B.'s group were located at a nearby store. R.R.B. and C.N. were taken into custody later that evening. The CPSO obtained a Juvenile Custody Affidavit the following day from Judge Cynthia Clay Guillory, who was serving as duty judge. On February 2, 2021, the State filed a petition in juvenile court charging then thirteen-year-old R.R.B. with second degree murder and inciting to riot.

After the matter was formally assigned to the juvenile court division of Judge Guillory, defense counsel filed a Motion to Recuse. The motion was referred to another judge for consideration who, following a hearing, denied the motion. As discussed below, this court thereafter denied R.R.B.'s application for supervisory writ seeking a reversal of that ruling.

Following a four-day juvenile court adjudication hearing in August 2021, Judge Guillory adjudicated R.R.B. delinquent for both charged offenses. On September 30, 2021, Judge Guillory rendered dispositions of seven years without benefit of parole, probation, or suspension of sentence for each offense.[3] Judge Guillory ordered that the dispositions be served concurrently with credit for time served.

## ASSIGNMENTS OF ERROR

R.R.B. filed the present appeal and assigns the following as error:

1) The evidence introduced at the adjudication hearing, when viewed under the standard of review applicable in juvenile delinquency

---

[3] As explained further below, the seven-year sentence imposed by the trial court was the maximum for this thirteen-year old offender. *See* La.Ch.Code arts. 897(D) and 898(E)(1). R.R.B., born June 15, 2007, was fourteen years old at the time of the September 30, 2021 disposition and thus subject to confinement until her twenty-first birthday. *See* La.Ch.Code art. 898(E)(5).

3

proceedings, sufficiently established that a rational trier of fact could not have found beyond a reasonable doubt that the homicide was not committed in self-defense.

2) The evidence introduced at the adjudication hearing, when viewed under the standard of review applicable in juvenile delinquency proceedings, was insufficient to prove beyond a reasonable doubt that R.R.B. committed the crime of inciting a riot.

3) The juvenile court erred in denying the Motion to Recuse Judge Guillory.

4) The trial court made several evidentiary rulings during the adjudication hearing which impinged upon Appellant's ability to present a defense, thus violating the Due Process Clause of the United States Constitution.

5) The juvenile judge failed to consider proper sentencing factors and articulate specific reasons for the dispositions imposed in this case, and imposed dispositions that are excessive, in violation of the Eighth Amendment of the United States Constitution. Counsel rendered ineffective assistance by failing to file a motion to reconsider the sentences, resulting in prejudice to R.R.B. Additionally, the dispositions are illegal as the judge improperly restricted probation, parole, or suspension of the sentences on each count.

## LAW AND DISCUSSION

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920 and La.Ch.Code art. 104, this court reviews juvenile criminal proceedings for errors patent on the face of the record. Although we identify several such errors, only two require further action, one regarding notification as to post-conviction relief and one addressed below in the discussion of R.R.B.'s fifth assignment of error. We briefly address the remaining errors patent, each of which is moot or harmless.

First, the February 2, 2021 petition was filed more than forty-eight hours after the continued custody hearing held January 27, 2021, in violation of La.Ch.Code art. 843. As Article 843(B) prescribes release of the juvenile as a remedy for such a violation, the issue of timeliness becomes moot once a juvenile is adjudicated a

4

delinquent. *See State in the Interest of C.N.*, 22-80 (La.App. 3 Cir. 6/1/22) (unpublished opinion) (2022 WL 1766018); *State in the Interest of S.D.*, 13-1028 (La.App. 3 Cir. 2/12/14) (unpublished opinion) (2014 WL 576265).

Further, R.R.B.'s place of birth was not listed in the petition. *See* La.Ch.Code art. 845. As Article 845(B) classifies this defect as one only of form, and since R.R.B. has alleged no prejudice as a result, this error is harmless. *See* La.Ch.Code art. 844(C).

Next, the juvenile court failed to advise R.R.B. of her rights at the appearance to answer the petition as required by La.Ch.Code art. 855. The failure to do so was harmless in this instance, however, as R.R.B. was represented by counsel and denied the allegations. *See State in Interest of J.R., III*, 17-345 (La.App. 3 Cir. 10/11/17) (unpublished opinion) (2017 WL 4532075).[4]

Finally, the juvenile court failed to inform R.R.B. of the two-year prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8 and as applied by this court in juvenile matters. *See, e.g., State in the Interest of C.C.H.*, 21-19 (La.App. 3 Cir. 5/5/21), 319 So.3d 940; *State in the Interest of B.A.*, 12-659 (La.App. 3 Cir. 12/19/12), 104 So.3d 833. We therefore order the juvenile court to inform R.R.B. of the provisions of Article 930.8 by sending appropriate written notice to her within ten days of the rendition of this opinion and to file written proof in the record that R.R.B. received the notice. *See, e.g., State in the Interest of B.A*, 104 So.3d 833.

---

[4] We additionally point out that neither the adjudication hearing nor the disposition hearing were held within the timeline prescribed by La.Ch.Code art. 877 and La.Ch.Code art. 892. Both periods were extended for good cause as permitted by the respective Articles. In particular, the delay in commencing the adjudication hearing resulted from pending defense motions and an unopposed motion for continuance filed by defense counsel, whereas the disposition hearing was held outside of the thirty day time period without objection. *See State in the Interest of K.K.*, 14-479 (La.App. 3 Cir. 12/17/14), 153 So.3d 1280. *See also State in the Interest of J.R., III*, 17-345.

*Assignment of Error Number 1 & 2 – Sufficiency of the Evidence*

In her first assignment of error, R.R.B. argues that the evidence was insufficient to prove she did not act in self-defense when she killed the victim. She points out that M.L. aggressively ran toward her with raised fists. By her second assignment of error, R.R.B. contends that the State failed to present evidence sufficient to support the delinquency adjudication for inciting to riot. We address the sufficiency arguments in turn.

Standard of Review

The supreme court has explained:

> It is axiomatic that in a juvenile adjudication proceeding, as in any criminal trial, the State must prove beyond a reasonable doubt every element of the offense alleged in the petition. Ch. C. art. 883 ("In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition."); *In Re Winship*, 397 U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child."); *State in the Interest of D.P.B.*, 02-1742, p. 4-5 (La. 5/20/03), 846 So. 2d 753, 756–57. The constitutional standard of review for juveniles is likewise identical to that of adults, *i.e.* the appellate court must determine whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the State proved all of the essential elements of the crime beyond a reasonable doubt. Ch. C. art. 883; *State ex rel. R.T.*, 00-0205, p. 2 (La. 2/21/01), 781 So. 2d 1239, 1241 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

*State in the Interest of E.S.*, 18-01763, p. 10 (La. 10/22/19), 285 So.3d 1046, 1054.

R.R.B. directs this court to *State in the Interest of M.P.*, 17-892 (La.App. 1 Cir. 11/1/17), 233 So.3d 633, for the proposition that both facts and law are subject to review in the appeal of a delinquency adjudication. The supreme court has cautioned, however, that an appellate court must not "los[e] sight of the basic principle on review that the rational fact finder test of *Jackson v. Virginia*, 'does not permit a reviewing court to substitute its own appreciation of the evidence for that

6

of the [fact finder].'" *State in Interest of C.D.*, 11-1701, p. 6 (La. 7/2/12), 93 So.3d 1272, 1276 (per curiam) (quoting *State v. Lubrano*, 563 So.2d 847, 850 (La.1990). Rather, an appellate court must not ordinarily assume the role of the factfinder in evaluating witness credibility or in weighing the respective credibility of those witnesses. *Id.*

Sufficiency of the Evidence – Second Degree Murder

We first note that R.R.B. does not contest the fact that she killed the victim. She instead asserts the act was a matter of self-defense because M.L. approached her aggressively and was physically larger.[5] R.R.B. alternatively argues that the adjudication for second degree murder should be reduced to manslaughter.

Justifiable homicide is defined by La.R.S. 14:20(A)(1), which states in pertinent part: "A homicide is justifiable: . . . When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."

Referencing her smaller stature, R.R.B. cites a second circuit case in which the panel explained that "an opponent who is physically large, powerful or skilled at fighting will inflict great bodily harm upon a weaker adversary." *State in Interest of D.S.*, 29554, p. 3 (La.App. 2 Cir. 5/7/97), 694 So.2d 565, 567. Despite those circumstances, however, the second circuit panel in *D.S.* ultimately focused on the lack of aggressive action by the victim and ultimately maintained the second degree murder adjudication at issue in that case. *Id.*

---

[5] R.R.B. observes that M.L. was physically larger than her, standing at five feet seven and half inches and weighing 165 pounds. At the time of the offense, R.R.B. was five feet one inch and weighed 115 pounds.

Both video evidence and the witness testimony in this case demonstrate that M.L. approached R.R.B. and the pair briefly exchanged blows. M.L., however, entered into the altercation unarmed, whereas R.R.B. entered the altercation armed with a knife she had stolen from Walmart with the intention of using it against M.L. in the expected altercation. R.R.B. then quickly inflicted a lethal wound. Under these circumstances, R.R.B.'s argument regarding self-defense thus fails due to intentionally arming herself with a dangerous weapon with the specific intent of using it against M.L., who was unarmed. Her use of such disproportionate force was not justified and directly resulted in M.L.'s death.

In a case involving a defendant's assertion that his killing of the victim was justifiable, a panel of this court explained that "the essence" of the defendant's defense was that "he was justified in responding to an attempted punch by shooting his opponent in the chest at close range." *State v. Mincey*, 08-1315, p. 3 (La.App. 3 Cir. 6/3/09), 14 So.3d 613, 615. The panel recognized that the victim was accompanied at the time by two friends and, "[t]hus, Defendant may have genuinely felt endangered; further, some level of fear was objectively reasonable." *Id*. The panel concluded, however, that "the level of force he used to defend himself was far beyond what was necessary under the circumstances." *Id.* The panel further explained that "responding to an oncoming punch by shooting the other person in the chest is an excessive response." *Id.* at 616. It determined that the defendant's reliance on self-defense was meritless.

R.R.B. suggests that *Mincey*'s distinguishing characteristic is that the victim in that case had not actually attacked the defendant. That distinction overlooks the panel's greater focus on the defendant's disproportionate response to the attack he

was facing, *i.e.*, despite whether or not the victim made contact with the defendant, the defendant's response of shooting the victim in the chest was excessive.

This court again addressed disproportionate response in *State v. Guillory*, 17-403 (La.App. 3 Cir. 10/11/17), 229 So.3d 949, *writ denied*, 17-1964 (La. 6/1/18), 244 So.3d 437, pointing to evidence indicating that the defendant's belief that he was in imminent danger of losing his life or receiving great bodily harm was unreasonable. The panel explained that "[f]irst and foremost," the defendant approached the victim. *Id.* at 964. Additionally, the panel explained that if the victim struck the first blow, "responding to an oncoming punch by stabbing that person is an excessive response." *Id.* Given the facts presented by *Guillory*, the panel concluded that the defendant's "actions exceeded the level of force reasonably and apparently necessary to defend himself or others against an unarmed man." *Id.* Finding that the State presented sufficient evidence to disprove the defendant's self-defense claim, the panel affirmed the defendant's conviction for second degree murder.

Under the guidance of both *Mincey* and *Guillory*, we conclude that the record in this case likewise supports the finding that R.R.B. responded with disproportionate force. Although M.L. was physically larger than R.R.B. and ran toward R.R.B. with raised fists, R.R.B. immediately escalated the encounter by quickly striking M.L. while armed with a knife she stole from Walmart with the intent of using it against M.L., and doing so with deadly force. The altercation was captured on both Walmart surveillance and Instagram Live, the latter footage livestreamed during the altercation. The footage was played for the juvenile court and entered into evidence. Given those circumstances and after review of the

9

footage on appeal, we find no merit in R.R.B.'s contention that the State failed to present sufficient evidence to support the second degree murder adjudication.

Neither do we find merit in R.R.B.'s contention that her adjudication should be reduced from second degree murder to manslaughter. Manslaughter is governed by La.R.S. 14:31(A)(1), which states in pertinent part: "[Manslaughter is a] homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."

*Guillory*, 229 So.3d 949, is again instructive as the panel in that case concluded that the approach of an unarmed person wanting to engage in a fistfight was not sufficient provocation to deprive the defendant of his self-control for purposes of reducing the adjudication for second degree murder to manslaughter. Additionally, and as previously indicated, R.R.B. stole the knife she used from Walmart with the specific intent to use it against M.L. in the altercation she knew was imminent. Under the standard of review, the record supports the same outcome in this case. We below affirm the adjudication for second degree murder.

Sufficiency of the Evidence - Inciting to Riot

R.R.B. also argues that the State did not adduce sufficient evidence in support of the inciting to riot charge. Louisiana Revised Statutes 14:329.2 defines inciting to riot as "the endeavor by any person to incite or procure any other person to create or participate in a riot." Louisiana Revised Statutes 14:329.1 defines "riot" as follows:

> A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent

conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.

R.R.B. maintains that it was C.N., not her, who set events in motion by texting R.R.B. to come to the scene. She acknowledges that although the record includes comments that indicate she attempted to contact her sister to join the impending fight, she contends that there was no clear evidence that she successfully contacted her.

The record, however, indicates that once C.N. texted R.R.B., R.R.B. intentionally travelled to the scene for purposes of preparing to fight M.L.'s group, and events were set in motion.[6] Those events included the communication between the two groups of girls and R.R.B.'s refusal to leave Walmart to engage in a fight outside because she was waiting on her sister. While R.R.B. initially stated to detectives that she called her sister to come pick her up, she later acknowledged that she had stated at the scene, "When my sister gets here, I'm going to come outside." Both C.N., who was in R.R.B.'s group, and E.M., who was in M.L.'s group, testified that they understood that when other girls arrived to help R.R.B.'s group, R.R.B.'s group would exit Walmart to fight outside. While inside of Walmart, R.R.B.'s group stole knives and intentionally armed themselves in preparation for the group fight. That altercation eventually unfolded and turned deadly when the group approached each other inside Walmart, all in the midst of unsuspecting customers at Walmart. This scenario reflects the definitions set forth for inciting to riot in both La.R.S. 14:329.1 and La.R.S. 14:329.2.

---

[6] In *State in the Interest of C.N.*, 22-80, a case involving the same incident as the present matter, this court affirmed C.N.'s conviction for inciting to riot, noting C.N.'s admission that she had set events in motion. The record in this case involving R.R.B. likewise shows that C.N. initiated the events by texting R.R.B. to let her know that C.N. had seen the other group of girls. R.R.B's response was "we going to fight them wh***s." It is clear from the record that there was not going to be a "fight" until R.R.B. arrived at the scene.

In *State v. Johnson*, 15-843 (La.App. 3 Cir. 3/2/16), 186 So.3d 348, *writ denied*, 16-0667 (La. 4/7/17), 218 So.3d 108, this court affirmed a defendant's conviction for inciting a riot in which the evidence demonstrated that the defendant intended to start a fight. While other parties participated in the incident, the panel explained that it was the defendant's "intention" to start the fight that "was a precipitating event which le[d] to the commotion and eventual gunfire resulting in the death of an innocent bystander." *Id.* at 357.

In addition to R.R.B.'s own actions, R.R.B. acted as "principal" to C.N.'s efforts to engage in a fight involving multiple individuals. *See* La.R.S. 14:24 ("All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."). Evidence from the girls' Instagram accounts reflect their willingness to fight and their intention to do so.

As in *Johnson*, the acts of C.N., as well as those of R.R.B and M.L.'s group, ultimately led to the encounter which ended in M.L.'s death. Following review under the deferential standard of *Jackson v. Virginia*, we find that the State presented sufficient evidence to support the adjudication of inciting to riot.

*Assignment of Error Number 3 – Motion to Recuse*

In her third assignment of error, R.R.B. argues that the juvenile court erred by denying her motion to recuse Judge Guillory. R.R.B. filed the motion in February 2021, and as noted above, Judge Guillory referred the motion to another judge for consideration.

The judge on referral heard the matter in April 2021 and denied relief. After R.R.B. sought review of the denial of the motion, a panel of this court denied relief, stating:

> **<u>WRIT DENIED; STAY DENIED:</u>** The Juvenile seeks review of the trial court's April 1, 2021 denial of her "Motion to Recuse Judge with Incorporated Memorandum in Support." This court finds no abuse of discretion in the trial court's denial as the events the Juvenile contends necessitate Judge Guillory's recusal do not rise to the level of probable bias that would require removal. *See State v. Daigle*, 18-634 (La. 4/30/18), 241 So.3d 999; *State v. LaCaze*, 16-234 (La. 3/13/18), 239 So.3d 807, *cert. denied*, _ U.S. _, 139 S.Ct. 321 (2018). As such, this writ application is denied. Furthermore, the Juvenile's request for a stay of proceedings is denied.

*State in the Interest of R.R.B.*, 21-313 (La.App. 3 Cir. 6/7/21) (an unpublished writ ruling).

R.R.B. does not directly argue why this court should revisit an issue it has previously addressed, instead moving directly to the merits of the claim. She states: "The appearance of bias is too high to be constitutionally tolerable and warranted recusal of the judge." Namely, she alleges that Judge Guillory had improper ex parte communications with prosecutors, that she gave a media interview about children's use of social media, and that the "interview was conducted in conjunction with a community forum organized and hosted by the judge." R.R.B. alleges that Judge Guillory should have known this case would be assigned to her.

These same arguments, however, were presented in the writ application and assessed by the earlier appellate panel rendering the writ ruling. We do not revisit the issue here and note that an appellate court has the discretion to not reconsider a previously decided issue unless it finds the previous decision was based on palpable error or that manifest injustice would occur. *See State v. Dugas*, 21-85 (La.App. 3 Cir. 5/11/22) (unpublished opinion) (2022 WL 1487006), *writ denied*, 22-00947 (La.

13

9/7/22), 345 So.3d 426. This court continues to apply the law of the case doctrine as a discretionary tool of judicial economy. *Id.*

We maintain that reasoning here, finding no palpable error in this court's earlier writ ruling. The only new argument R.R.B. poses is that Judge Guillory "made several rulings" during the adjudication hearing which were unfavorable to the defense. Those rulings are the subject of the fourth assignment of error, however. As reflected by the subsequent discussion, we maintain those rulings after review.

*Assignment of Error Number 4 – Juvenile Court Rulings*

In her fourth assignment of error, R.R.B. argues that a pair of the juvenile court's rulings undermined her ability to put on a defense.

Indigency

On August 11, 2021, R.R.B. filed a "Motion for Determination of Indigency and Request for Court Proceedings[,]" seeking copies of the minutes and transcript from C.N.'s adjudication hearing. At the resulting hearing, the parties and the juvenile court agreed that R.R.B. is indigent, but the juvenile court denied R.R.B.'s request.

In so ruling, the juvenile court referenced the confidentiality considerations of La.Ch.Code art. 412, which provides:

> A. Records and reports concerning all matters or proceedings before the juvenile court, except traffic violations, are confidential and shall not be disclosed except as expressly authorized by this Code. Any person authorized to review or receive confidential information shall preserve its confidentiality unless a court order authorizes them to share with others.
>
> . . . .
>
> E. (1) For good cause when the information is material and necessary to a specific investigation or proceeding, the court may order the release of individual records and reports, or certain information

14

contained therein, to a petitioner, limited to the specific purpose for which the court authorizes release.

(2) The petition must:

(a) Be filed with the juvenile court and served on the juvenile and his attorney.

(b) State the reason for the request and the intended use of the information, including any intended redisclosure.

(c) State the names of all persons that will have access to the information.

(3) In ruling on the petition, the juvenile court shall consider the privacy of the juvenile, risk of harm to the juvenile, whether a compelling reason exists for releasing the information, and whether the release is necessary for the protection of a legitimate interest. The court shall ensure the juvenile is afforded notice of the hearing and an opportunity to be heard at a contradictory hearing on the petition.

Rulings on disclosure of juvenile records are reviewed for abuse of discretion. *See, e.g., State ex rel. R. V.*, 98-2831 (La.App. 4 Cir. 2/12/99), 729 So.2d 1072.

In denying R.R.B.'s request for materials from the proceeding against C.N., the juvenile court explained:

[T]he court in reviewing the Children's Code Article 412, confidentiality of records, disclosure exceptions and sanctions, I find that the defendant is not entitled to the transcript or the minutes of a co-defendant herein, Ms. [C.N.]. Records and reports cited under the statute concerning all matters or proceedings before the juvenile court except traffic violations are confidential and shall not be disclosed except as expressly authorized by this code . . . .

I do not find anywhere in the Code where a co-defendant is entitled to the minutes and/or the transcript of a coactor or a co-defendant herein and specifically as requested I find that they would not be entitled to [C.N.]'s adjudication hearing nor copies of her minutes and would not order the same to be transcribed herein. That is the ruling of the court.

We find no abuse of discretion in the juvenile court's ruling in light of

the text of Article 412. Moreover, R.R.B. cites neither statutory law nor

jurisprudence to support her argument under Article 412. We find no merit in this assignment of error.

Hostile Witness

R.R.B. further argues that the juvenile court erred in not declaring her witness E.M. to be a "hostile witness." Although E.M. was a member of M.L.'s group during the events at issue, she was called as a defense witness. When the State objected to the leading nature of the questions posed by Defense counsel Todd Clemons, Mr. Clemons sought to have E.M. declared a hostile witness, stating that E.M. was "making it very very clear she does not want to cooperate with any aspect of this process." Mr. Clemons explained that he should be allowed "to lead her to some extent to be able to put on my defense and elicit some information from her." The juvenile court denied the request, explained to E.M. that the adjudication was in its fourth day, and expressed the importance of testifying truthfully. The juvenile court stated to E.M., "I know that you're young. I know that you don't want to be here. But you have to answer the questions because we have to build a record. Okay?" E.M. responded "Yes, ma'am." The juvenile court thereafter explained to counsel:

> All right. I'm not going to declare her a hostile witness. She is young. Most of our teenagers have attitudes. But I think I've impressed upon her the importance of answering your questions, Mr. Clemons, so that we can get down to what happened on January 23, 2021.

On review, we consider that a juvenile court's decision to permit the use of leading questions in the interrogation of a witness unable or unwilling to respond to proper questioning is largely within the juvenile court's discretion. *State v. Pierre*, 14-1071 (La.App. 3 Cir. 5/6/15), 170 So.3d 348, *writ denied*, 15-1151 (La. 5/13/16),

191 So.3d 1054. It is only in the event that a clear abuse of discretion prejudices a defendant's rights that a reversal of a conviction is justified. *Id. See also State v. Law*, 15-210 (La.App. 1 Cir. 2/24/16), 189 So.3d 1164, *writ denied*, 16-926 (La. 4/24/17), 220 So.3d 740. In this case, in spite of the juvenile court's ruling, the transcript shows defense counsel continued to ask leading question to which the State lodged no objections. Hence, R.R.B. fails to demonstrate that she suffered any prejudice from the juvenile court's decision not to declare E.M. a "hostile witness."

And, while R.R.B. asserts that E.M. "initially failed to swear to tell the truth[,]" the transcript does not support that position. The transcript instead indicates that after the oath was administered, the proceedings were interrupted by the arrival of E.M.'s mother. After the court spoke briefly with the mother, the court reporter informed the court that E.M. had not "answered yet." After the court again administered the oath, E.M. responded, "Yes, ma'am."

R.R.B. further claims that E.M. was evasive during questioning by defense counsel but not during questioning by prosecutors. Notwithstanding the subjective nature of this assertion, R.R.B. does not point to specific instances in which defense counsel was unable to elicit information he was seeking. This lack of specificity is also seen in R.R.B.'s contention that defense counsel's inability to pose leading questions was compounded by purported hearsay evidence introduced through one of the detectives regarding E.M.'s initial explanation for why the group had gone to Walmart. R.R.B. has not, however, cited specific information that she was unable to reach that hurt her case. We therefore conclude that R.R.B. has failed to demonstrate that the juvenile court abused its discretion by declining to declare E.M. was a "hostile witness."

The argument and the assignment of error lack merit.

17

*Assignment of Error Number 5 – Excessive Dispositions*

Following the adjudication hearing, the juvenile court ordered secure placement for a term not to exceed seven years for each adjudication and ordered that each disposition be served without benefit of probation, parole, or suspension of sentence.[7] R.R.B. contends that the adjudications are excessive in light of her lack of prior adjudications of delinquency, her family history, and the circumstances surrounding the altercation leading to M.L.'s death. R.R.B. further notes that the Office of Juvenile Justice (OJJ) recommended only that R.R.B. be confined to an intensive residential program until her eighteenth birthday. R.R.B. further suggests that the juvenile court was without authority to impose the dispositions without benefit of probation, parole, or suspension of sentence. The State agrees with this latter observation. We address R.R.B.'s arguments in turn.

With regard to second degree murder, La.R.S. 14:30.1 carries a mandatory life sentence without benefit of parole, probation, or suspension of sentence for adult offenders. Pursuant to La.R.S. 14:329.7, inciting to riot that results in death carries a maximum twenty-one year sentence for an adult offender.

Juvenile dispositions are governed by La.Ch.Code art. 897:

> A.   After adjudication of any felony-grade delinquent act other than those described in Article 897.1, the court may:
>
> . . . .

_____

[7] R.R.B. acknowledges that her adjudication counsel did not file a motion to reconsider the disposition and suggests that she was prejudiced by that failure. However, counsel's failure to do so does not hinder consideration of R.R.B.'s claim on appeal as she is a juvenile. While La.Code Crim.P. art. 881.1 requires the filing of a motion to reconsider for review of adult sentences, La.Ch.Code art. 909 controls review of juvenile matters and does not impose a corresponding requirement in juvenile matters. *See State in the Interest of A.N.*, 18-1571 (La. 10/22/19), 286 So.3d 969; *State v. J.R.S.C.,* 00-2108 (La. 6/1/01), 788 So.2d 424. We also note that R.R.B.'s adjudication counsel lodged a contemporaneous objection to the disposition.

C. Except as provided for in Article 897.1, the court may commit the child to the custody of a private or public institution or agency. When commitment is to be made to a private institution or agency, the court shall:

(1) Select one that has been licensed under state law, if licensure is required by law for such an institution or agency.

(2) Whenever practicable, select an agency or institution of the same religious faith as the child or his parents.

D. Except as provided in Article 897.1, the court may commit the child to the custody of the Department of Public Safety and Corrections, with or without a recommendation that the child be placed in alternative care facilities through the department's client placement process, or be referred to appropriate placement resources in the state available through other public or private agencies.

E. Except as provided for in Article 897.1, the court may impose but suspend the execution of the whole or part of any order of commitment and place the child on probation subject to any of the terms and conditions authorized under Paragraph B of this Article.

Louisiana Children's Code Article 897.1 governs dispositions for juveniles who are fourteen years old or older at the time of the offense and who commit enumerated violent offenses such as murder. R.R.B. was only thirteen at the time of the offense. Article 897.1 therefore does not apply in this instance.

Louisiana Children's Code Article 898 is instead applicable to this thirteen-year-old offender and provides in pertinent part:

A. Notwithstanding any other provision of law to the contrary, no judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the felony forming the basis for the adjudication. The court shall give a child credit for time spent in secure detention prior to the imposition of disposition.

. . . .

E. These maximums do not apply if:

(1) The child *was under thirteen at the time of a commitment to custody* of the Department of Public Safety and Corrections, in which case the judgment shall terminate upon the child's reaching age eighteen.

. . . .

     (5)    The child reaches age twenty-one.

(Emphasis added.) R.R.B. was not "under thirteen at the time" of commitment

to custody and thus, the juvenile court was not confined by the limitation of

La.Ch.Code art. 898(E)(1). Rather, the dispositions as applied to R.R.B. were

subject only to the limitation of La.Ch.Code art. 898(E)(5), i.e., until she

reached age twenty-one. As seen below, the juvenile court recognized the

inapplicability of La.Ch.Code art. 898(E)(1) and, instead, imposed

dispositions pursuant to the limitation of La.Ch.Code art. 898(E)(5).

Specifically, since R.R.B. was fourteen years old at the time of sentencing,

the seven-year dispositions were the maximum imposition available through

her twenty-first birthday.

    This court has explained:

> Generally, in a claim for excessiveness of a disposition in a juvenile matter, an appellate court must first ascertain whether the juvenile judge took cognizance of the general guidelines of La.Ch.Code art. 901 and whether the record reflects an adequate basis for the commitment imposed. *State in the Interest of M.N.H.,* 01–1218 (La.App. 3 Cir. 2/6/02), 807 So.2d 1149, *writ denied,* 02–1041 (La.5/24/02), 816 So.2d 857. Thereafter, the appellate court considers the claim of constitutional excessiveness in light of the circumstances of the case and the background of the juvenile. *Id.* The disposition will not be set aside on such a claim of excessiveness "[a]bsent a showing of manifest abuse of the wide discretion afforded in such cases." *Id.* at 1155, *quoting State in the Interest of T.L.,* 28,564 (La.App. 2 Cir. 5/8/96), 674 So.2d 1122.

*State in the Interest of S.D.*, 14-439, pp. 4-5 (La.App. 3 Cir. 10/1/14), 149 So.3d 917,

920-21, *writ denied*, 16-1953 (La. 11/15/16), 205 So.3d 907.

The guidelines provided in La.Ch.Code art. 901 state, in pertinent part:

C. Except as provided in Article 897.1, commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:

(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.

(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.

(3) A lesser disposition will deprecate the seriousness of the child's delinquent act.

(4) The delinquent act involved the illegal carrying, use, or possession of a firearm.

In imposing the dispositions in this case, the juvenile court explained:

This case has been extremely difficult for me and for all involved. I have heard, previously heard four days of testimony, commencing August 23rd, 24th, 25th, and 26th, and also had hearings prior to the actual adjudication hearings taking place.

I had an opportunity to observe the demeanor and testimony of all the witnesses, reviewed the evidence, researched the law, considered the filings by both the State and the Defense, and heard all arguments and presentations made to the Court in finding that the State bore its burden of proof beyond a reasonable doubt that [R.R.B.] had committed the crimes of Inciting to Riot with a Death and Second Degree Murder.

I have studied the Pre-D report [8] and considered the recommendations of OJJS. I have reviewed all attachments thereto, inclusive of the Calcasieu Parish School Board's attachment. I note that while in Detention from January to August 18th, 2021, [R.R.B.], you had 76 writeups.

On your [Ray D. Molo Middle Magnet School] report, there was a report of cyber bullying as well as intimidation. [R.R.B.] and a group of girls were texting and threatening to hurt another student by participating in a gang fight. The other student is fearful to go to class. [R.R.B.] has also made comments on campus directed, but indirectly, at the student.

---

[8] A "Pre-D report" refers to a court ordered pre-dispositional report prepared by the OJJ, similar to a pre-sentence report in adult proceedings.

21

Due to the Covid guidelines, a fight of this sort could potentially put the entire student population at school at risk. You had an out-of-school suspension from December 11th, 2020, to December 17th, 2020. You had expulsion [in] 2021, January 4th, 2021, and it looks like to -- and I'm not sure how it -- it shows a date of March 10th, 2021, that you were in detention during that time after the January 23rd incident.

I cannot accept the recommendation of OJJS. I realize that juvenile court is designed for rehabilitation. The circumstances surrounding this incident were senseless, resulting in the loss of a young life by your hand, [R.R.B.], also a youngster. There wasn't even a beef between you and [M.L.]. The beef was between you and E.M. And because she's a minor, I will not divulge her name.

You armed yourself with a knife when you went into the Walmart store, that you stole while in Walmart because you took it out of the packaging in the store. You intentionally, with knowledge and forethought, was going to stab somebody. You had made up in your mind that you were going to do that. Had you been older or have this happen less than five months later, you could have been tried as an adult. Then, the statute provides that you would have been looking at life in prison or up to 21 years; on the inciting to riot with the loss of life, 20 years.

In life, there are situations and circumstances that we wish that we could take back. We wish we could rewind. We wish we could of made a different choice. However, you don't get a do-over. [M.L.]'s gone. We have the loss of a life. Can't bring her back.

Because of the serious and aggravating nature of this offense, in accordance with the Children's Code Articles 897, 897.1, et seq, Louisiana Statute Annotated Revised Statute 14:30.1 and the resulting statute regarding 329.2 with the loss of life, I therefore sentence you on the charge of Second Degree Murder to the Louisiana Department of Public Safety and Corrections, Office of Juvenile Justice, to a secure facility for a period of time not to exceed seven years, without benefit of probation, parole, or suspension of sentence.

On the charge of Inciting a Riot with a Death, in violation of 14:329.1, et seq, I sentence you to the Louisiana Department of Public Safety and Corrections, OJJ, in a secure facility for a period of time not to exceed seven years, without benefit of probation, parole, or suspension of sentence. Said sentence is to run concurrently with each other.

I'll give you credit for time served while in the Detention Center. Any lesser sentence, [R.R.B.], would derogate the serious nature of these offenses.

I have had a lot of time to consider the Children's Code, and the Children's Code provides that when the Children's Code is silent, we turn to Title 14 as well as the Code of Criminal Procedure. And, unfortunately, they deal with youth that are less than 13, which is until 18th birthday. They deal with youth 14 on up, which is till their 21st birthday, but they don't deal with you that are 13. And, therefore, when it's silent, Second Degree Murder carries life, and juvenile life has been deemed until the 21st birthday.

As I previously stated, any lesser sentence would derogate the seriousness of this crime. Your conduct on that date during the commission of the offense manifested deliberate cruelty to the victim. You weren't even planning on fighting with [M.L.]. You were planning on fighting with the other kid who was about your size, maybe smaller than you. You used threats of and actually used violence in the commission of the offense. You used a dangerous weapon in the commission of the offense. And not only that, you did it for the whole world to see because it was on social media.

I would only hope, [R.R.B.], in realizing what happened that evening was a deliberate act, so very cruel in nature. The world saw it, unfortunately, and then you ran away laughing. The coroner testified that you plunged the knife so hard, with such force when you stabbed [M.L.], this lends itself to serious aggravating circumstances.

I will review your case every four to six months to make sure that your educational, medical, and social needs are being met. My hope is that you realize what an awesome young lady you are and that you strive to become a productive member of society upon your release.

That is my ruling. Thank you so much.

These detailed reasons satisfy La.Ch.Code art. 901 as well as the requirements set forth in *State in the Interest of S.D.*, 149 So.3d 917. The juvenile court further correctly observed the hiatus in the Children's Code regarding thirteen-year-olds and determined that the court retained the authority to impose secure care until the juvenile's twenty-first birthday. *See* La.Ch.Code arts. 897(D). *See also* 898(E)(1) and (5). *See, e.g., State in Interest of D.B.*, 14-85 (La.App. 3 Cir. 5/7/14), 141 So.3d 296. We therefore maintain the juvenile court's order that R.R.B. serve dispositions of not more than seven years of secure confinement.

Both R.R.B. and the State agree, however, that the juvenile court erred in excluding the benefit of probation, parole, or suspension of sentence from the disposition. On this point, this court has explained that La.Ch.Code art. 898 does not state that the dispositions imposed pursuant to it must be imposed without benefit of probation, parole, suspension, or modification of sentence. In *State in the Interest of D.B.*, 141 So.3d at 304-06, the panel explained:

> Unlike La.Ch.Code art. 897.1, article 898 does not state that the dispositions imposed pursuant to it must be imposed without benefit of probation, parole, suspension, or modification of sentence. In *State in the Interest of J.C.*, 09-2000 (La.App. 1 Cir. 7/15/10) (unpublished opinion), the first circuit found that a disposition pursuant to La.Ch.Code art. 898 could not be imposed without the benefit of parole:
>
>> Although [Article 898] provides maximum disposition limitations, Article 898 does not authorize the juvenile court to place limitations on a child's parole eligibility at the time of the initial disposition. Such limitations are authorized and mandated only for the enumerated offenses set forth in Article 897.1. . . .
>>
>> . . . .
>>
>> Based on our interpretation of Article 898 in pari materia with Article 897.1, we find the juvenile court legally erred in ordering the first three years of custody to be served without benefit of parole. Accordingly, we amend the custody order to delete this restriction.
>
> . . . .
>
> In La.R.S. 15:906, the legislature announced its intent that all juveniles, except those sentenced pursuant to La.Ch.Code art. 897.1, should have the opportunity for early release from commitment[.]
>
> . . . .
>
> Considering the language in La.Ch.Code art. 898(B) concerning the possibility of parole, the language in La.Ch.Code art. 909 concerning the court's power to modify a sentence, the language of La.R.S. 15:906 concerning the Department of Corrections' authority to seek early release for a juvenile, the language in La.R.S. 15:906 concerning the legislature's clear intent for rehabilitation for all juveniles except those who fall under La.Ch.Code art. 897.1, and the

24

first circuit's opinion in J.C., the juvenile court erred in imposing the present Juvenile's disposition without benefit of parole or modification of sentence.

*See also State in the Interest of J.C.*, 09-2000 (La.App. 1 Cir. 7/15/10) (unpublished opinion) (2010 WL 2802104) (first omission in original).

As pointed out in *D.B.*, when La.Ch.Code art. 897.1 does not apply, a juvenile court may not impose a disposition without parole, probation, or suspension of sentence. The parties are thus correct in observing that the juvenile court erred in imposing those exclusions on R.R.B.'s adjudication. We below excise the exclusions of the benefit of parole, probation, or suspension of sentence and otherwise affirm the amended dispositions.

### DECREE

For the foregoing reasons, we affirm R.R.B.'s adjudications for second degree murder and inciting to riot. We excise the exclusions of the benefit of parole, probation, or suspension of sentence from the respective dispositions imposed for the second degree murder adjudication and the inciting to riot adjudication. We affirm the dispositions as amended. We order the trial court to inform R.R.B. of the provision of La.Code Crim.P. art. 930.8 by sending appropriate written notice to her within ten days of the rendition of this opinion and to file written proof in the record that R.R.B. received the notice.

**ADJUDICATIONS AFFIRMED.**
**DISPOSITIONS AFFIRMED AS AMENDED.**