STATE OF LOUISIANA IN THE INTEREST
OF L.L.

NO. 23-KA-83

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH JUVENILE COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-JU-122, DIVISION "B"
HONORABLE AMANDA L. CALOGERO, JUDGE PRESIDING

June 21, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Robert A. Chaisson

**AFFIRMED; REMANDED WITH INSTRUCTIONS**

**JGG**
**FHW**
**RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Elizabeth B. Curren
Ashton Robinson
Douglas E. Rushton, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
L.L.
Katherine M. Franks

**GRAVOIS, J.**

In this matter, the juvenile, L.L.,[1] was adjudicated delinquent for the offense of first degree rape and was committed to the Office of Juvenile Justice until his twenty-first birthday. On appeal, L.L. contends that the victim's testimony was not sufficient to support adjudicating him delinquent, and that the lifetime sex offender registration and notification requirements imposed on him result in an unconstitutionally excessive disposition. For the reasons that follow, we affirm the juvenile's adjudication and disposition and remand the matter for correction of the disposition to provide that the juvenile's confinement is to be served without the benefit of probation or suspension of sentence.

## PROCEDURAL HISTORY

On May 4, 2022, the Jefferson Parish District Attorney filed a petition alleging that L.L. violated La. R.S. 14:42(A)(4) by committing first degree rape. The juvenile denied the allegations of the petition on May 9, 2022.

On August 10, 2022, the juvenile was adjudicated delinquent. A disposition hearing was held on October 20, 2022 and the juvenile was committed to the Office of Juvenile Justice until his twenty-first birthday. The disposition hearing was held open. On October 24, 2022, the juvenile filed a "Motion and Incorporated Memorandum for New Trial." In that motion, the juvenile relied on La. C.Cr.P. art. 851, asserting that the State did not prove all of the elements of the crime. Also, he stated that he was entitled to a new trial if there was new and material evidence and asserted that the victim's statement during the disposition

---

[1] In order to maintain the confidentiality of the proceedings, as required by La. Ch.C. art. 412, and pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the juvenile will be used. *See State in Interest of T.L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 315 n.1. Further, pursuant to La. R.S. 46:1844(W)(3) and in the interest of protecting minor victims and victims of sexual offenses, this Court's published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (*i.e.*, parent, sibling, or relative with the same last name as the victim). *State v. E.J.M., III*, 12-774 (La. App. 5 Cir. 5/23/13), 119 So.3d 648, 652 n.1. *C.f.*, *State v. R.W.B.*, 12-453 (La. 12/4/12), 105 So.3d 54.

hearing was new evidence. The juvenile asserted that a new trial would further the ends of justice because he had ineffective assistance of counsel. The trial court denied the motion on October 26, 2022, finding that the motion "outlined no specific element which was not proven. Further, the motion provided no newly discovered evidence."

The disposition hearing continued on October 28, 2022. At that hearing, the sex offender registration requirements were imposed, and a sex offender registration form was signed. On November 2, 2022, the juvenile filed a second "Motion and Incorporated Memorandum for New Trial," which was denied on November 7, 2022. This timely appeal followed.

On appeal, the juvenile challenges the sufficiency of the evidence and the imposition of lifetime sex offender registration and notification requirements.

**FACTS**

In the summer of 2017, L.L. went on a trip with his sister (K.L.), his two cousins (B.S. and I.S.), and his uncle (M.S.) to Grand Isle. On February 15, 2022, B.S.'s mother (M.I.) reported to the police that L.L. raped B.S. on that trip. At the time of the incident, B.S. was six years old and L.L. was fourteen years old.[2]

Sergeant Terri Danna with the juvenile crimes section of the Jefferson Parish Sheriff's Office conducted an investigation of this incident after being contacted by a detective with the Grand Isle Police Department on February 15, 2022. The Grand Isle Police Department had received a call from someone who wanted to report an incident in their jurisdiction that involved sexual abuse. In response, Sergeant Danna contacted M.I. (the victim's mother), who explained to her that on the previous day, her daughter told her that some years ago when her father took her fishing in Grand Isle with other relatives, her cousin L.L. sexually abused her.

---

[2] At trial, B.S. testified that her birthdate is December 22, 2010. L.L. testified that his birthdate is July 31, 2002.

On February 16, 2022, Sergeant Danna contacted the Livingston Parish (where the victim, B.S., was residing) Sheriff's Office, and they facilitated a forensic interview of B.S. the next day. Sergeant Danna monitored the live interview feed and stated that B.S. made a "full descriptive disclosure of a one-time incident that happened in June or July of 2017." Sergeant Danna also spoke to B.S. When she presented B.S. with a photograph of L.L., B.S. immediately identified the juvenile as her cousin. She testified that B.S. turned her head, shoved the picture away, and was tearful. Sergeant Danna obtained an arrest warrant for L.L. for first degree rape and L.L. was arrested.

M.S. (the victim's father) testified that he took L.L., L.L's sister (K.L.), and his two daughters on a four-day fishing trip to Grand Isle in the summer of 2017. On the second day of the trip, they caught fish and cleaned them. M.S. spent somewhere between two and three hours on the second day cleaning the fish. He testified that L.L. helped him clean the fish until "towards the end." M.S. explained that L.L. was with him for "[m]aybe an hour." He did not know where L.L. went after helping him.[3] M.S. denied seeing anything unusual during the fishing trip. He described B.S. as normal during that day and night.

Jasmine Gardner, a forensic interviewer at the Children's Advocacy Center (C.A.C.), testified that she interviewed B.S. Only B.S. and Ms. Gardner were in the room during the interview, while Sergeant Danna watched via Zoom.[4]

In the C.A.C. interview, when asked why she was there, B.S. explained that her cousin "touched her" when she was six. She elaborated that they were on vacation in Grand Isle and had just returned from fishing. While her dad was

---

[3] M.S. acknowledged taking pictures during the trip and posting them on Facebook. One picture was of L.L. and B.S. together holding a fish she caught, and others showed L.L. and the other children holding fish they caught. A picture showed the three girls and L.L. and all of the caught fish lined up on a picnic table.

[4] The interview was audio and video recorded and was admitted into evidence as State's Exhibit 4 and was published.

outside "skinning the fish," B.S., her sister, and K.L. were running around, and at some point, they decided to play hide and seek. While playing, her cousin, L.L., brought her into the bathroom and told her to spread her legs. B.S. stated that the bathroom door was locked and the lights were off. The bathroom did not have a window. He pulled down her shorts and started touching her. She clarified that he rubbed the outside and inside of her vagina and licked her vagina. When asked if he made her do anything to his body, she replied that he made her touch his penis.

B.S. stated that he asked her if it felt good. She lied to him and said that it did because she was scared. L.L. then pulled down his pants, put her on his leg, and put his penis in her vagina. She then told him that she wanted her dad and that she needed to go to the bathroom. She went to the bathroom and her vagina was bleeding a little. She changed her underwear and washed out the old pair. When she showered that night, she washed out a second pair of underwear. She said they went downstairs, and she acted like everything was fine. This was the only incident.

B.S. stated she had trouble sleeping because for the past month she had dreams that her cousin touched her again. She wanted the dreams to go away, and she did not like thinking about it. She told her mom, who called her dad.

At trial, B.S. testified that while she was on a vacation in Grand Isle with her sister, cousins, and her dad, L.L. raped her. She testified that during the trip they would fish early in the morning or evening and get snowballs. After fishing and getting snowballs, her dad would be outside "skinning the fish." While playing hide and seek, L.L. told B.S. to hide with him. B.S. testified that he brought her in the bathroom, turned off the lights, and locked the door. The bathroom was small and did not have any windows. Some light came in from under the door and she was able to see L.L. He told her to spread out her legs and pulled her pants and underwear down. B.S. stated that L.L. told her to get on his knees and that he

licked her "private area." She then said, "[H]e told me to get on his legs. And then he pulled down his pants and then he started licking my private area and then he was holding my waist and then he told me to sit down and then he put his penis in my vagina."

B.S. further explained that when her pants were off, L.L. sat on the toilet and she stood on his knees. He did not have his pants on, and B.S. did not remember if he had his underwear on. While she stood on his knees, L.L. licked her vagina for ten to twenty minutes. B.S. testified that after, he asked her if it felt good. She answered affirmatively because she was scared. B.S. stated that "[i]t started burning." L.L. told her to sit on his lap and he inserted his penis in her. During the approximately five minutes that this lasted, L.L. repeatedly asked B.S. if it felt good. She recalled feeling scared, mad, and sad. B.S. testified that it stopped because K.L. and I.S. began to bang on the door and said that they knew they were in there. L.L. and B.S. pulled up their pants and unlocked the door.

B.S. then "went to the bathroom." In the other bathroom, she washed out her underwear because there was blood on it and then changed her underwear.[5] B.S. testified that after leaving the bathroom, her stomach hurt and her "private area was burning really bad." After, they all ran around outside, and she acted like nothing had happened. She did not tell anyone because she thought she would get in trouble and not be believed.

When asked what made her decide to tell someone what happened, B.S. explained that she "wanted to get it off [her] chest" and that "the hurt" kept building up. B.S. stated that thinking about what happened made her feel sad and

---

[5] In her C.A.C. interview, B.S. stated that the place where they were staying had more than one bathroom. However, L.L. and K.L. testified at trial that there was only one bathroom where they were staying.

mad.  She stated that she had dreams that made her think about it.[6]  B.S. told her mother about the dreams, and her mother called her father.

In his testimony at trial, L.L. (the accused juvenile) recalled being on vacation in Grand Isle with his little sister, his uncle, and his two cousins the weekend of the alleged incident.  He was about fourteen years old at the time.  On the second day, they bought bait and fished until lunchtime.  L.L. testified that they returned to the camp, dropped off the fish, and went to a restaurant.  Later, they returned to the camp, and his uncle began cleaning the fish.  L.L. helped him.  L.L. stated that while cleaning fish, he did not leave his uncle to do anything else and was with his uncle cleaning the fish the entire time.  He described that it was normal for him to spend more of his time with his uncle than with everybody else since he and his uncle were close.  When asked why he would not spend time with the rest of his family, L.L. testified, "I just wasn't that kind of person.  I was raised to be a man, I mean, from my stepdad.  My stepdad raised me to be a man and not play.  I worked.  I didn't play."  When asked if he knew where his cousins and sister were while they cleaned the fish, L.L. explained that "they were back and forth upstairs and downstairs."  He denied playing tag or hide and seek on the trip.

L.L. testified that the weekend after that trip, he and B.S. went crabbing with their family.  B.S. did not act differently around him and her demeanor had not changed.  When asked if he ever spent time alone with B.S., L.L. initially answered negatively.  He then explained that he babysat her and her sister, but that his sister went with him.  L.L. testified that there were no instances where he and B.S. were alone together, where he took her into the bathroom, or took off her clothes.  He also denied talking to B.S. alone before, during, or after the trip.

---

[6] B.S. described that in the dream, "[w]e would be at a crawfish boil with my brother and my two sisters, my mom, me, and my nephews and nieces; and he would come in a gray truck and start chasing me and then I would wake up."  She had that dream at least ten times, but could not recall when it started.

K.L. (L.L.'s sister) testified at trial that she was ten years old when she went on the Grand Isle fishing trip. On the second day of the trip, they fished and then went back to the camp. L.L. and her uncle were outside skinning fish, and K.L. and the other girls were inside where they ran around and played tag. She testified that if she or one of the other girls had to go to the bathroom, they all went together. K.L. testified that L.L. did not come inside alone. When L.L. went inside, so did their uncle. K.L. testified that she did not see L.L. inside the camp while her uncle cleaned the fish. He was outside of the camp unless they were going to sleep.

K.L stated she never saw B.S. and L.L. go off by themselves or saw B.S. go off alone. K.L. indicated that B.S. did not seem scared of L.L. after the fishing trip. She testified that L.L. was not the type of person to play tag or hide and seek and that he did not play with the cousins. L.L. did not babysit B.S. and her sister without K.L., and when they babysat, L.L. was not alone with B.S. K.L. testified that L.L. would pick on her and L.L.'s brother.

## ASSIGNMENT OF ERROR NUMBER ONE

### *Sufficiency of the evidence*

In his first assignment of error, the juvenile argues that the victim was not credible enough for him to be adjudicated delinquent. He contends that B.S.'s dream was not sexual in nature, that B.S.'s statements both at trial and in her C.A.C. interview appeared to be coached, and that it is unlikely that she could remember in such detail a trip taken when she was six years old. He further states that it was apparent at the disposition hearing that B.S.'s mother participated actively in the prosecution and wrote the victim impact statement. The juvenile concludes that the victim's testimony was not believable and was not sufficient to support adjudicating him delinquent.

The record reflects that after hearing the testimony and considering the other evidence presented at the adjudication hearing, the judge adjudicated the juvenile delinquent as to one count of first degree rape, stating in pertinent part:

> The testimony today came through with an experienced, respected law enforcement agent who investigated a delayed disclosure and delayed report. It involved an initial disclosure and that disclosure was followed up by a CAC, Children's Advocacy Center, interview conducted in the parish where the child resides. That interview, in this Court's opinion, was substantially the same as the child's live testimony here in court.
>
> I do note for the record that although this record would not have any video of the court room, that the child victim was distraught in open court upon entry and being faced with the idea of testifying and relaying this set of facts. There was nothing in her demeanor that indicated that she was in any way being rewarded or was finding it easy or simple to come here and relay this information in court today.
>
> Through the witness testimony, there was no witness that gave any indication that there was a motive to lie or there would be any benefit to raise this story and make up these allegations. In the State of Louisiana, the word of a witness or the word of one victim is sufficient without corroborating physical evidence even if that witness is a child. There was no evidence put forth that this child had ever made a disclosure about anyone else, and she was very clear in her identification of this defendant as the perpetrator. The child's father also testified and was quite clear in a recollection that this individual was not with him at all times. The witness brought by the defense did recall a rather teasing nature that the defendant had at this age. Although she did not recall any specifics, she did specifically and really unrequired [sic] answer that he often did tease and did converse and talk with other children which seemed a little bit unlike the depiction that the defendant gave of himself as being only a worker and not conversing.
>
> The Court also found it a bit unbelievable by the witness for the defense that, essentially, the defendant never was inside of the camp. Of course, when you are in close quarters like this, everyone is in and out. It can be very hot in the month of July, and I would tend to believe that everyone would have gone inside the camp at different times during the day.
>
> Based upon the uncontroverted statement which was consistent through her report to law enforcement, her interview at the CAC, as well as her testimony here in court today, this Court finds no other option but to adjudicate this individual as delinquent under the first degree rape statute.

The constitutional standard for testing the sufficiency of evidence in delinquency proceedings, as in criminal proceedings against an adult, requires that

the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *State in Interest of T.L.*, 17-579 (La. App. 5 Cir. 2/21/18), 240 So.3d 310, 320. It is axiomatic that in a juvenile adjudication proceeding, as in any criminal trial, the State must prove beyond a reasonable doubt every element of the offense alleged in the petition. *See* La. Ch. C. art. 883; *State in Interest of E.S.*, 18-1763 (La. 10/22/19), 285 So.3d 1046, 1054.

In its determination of whether any rational trier of fact would have found the defendant guilty, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. The credibility of a witness, including the victim, is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Gonzalez*, 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1233. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 703. In sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *Id*.

In addition, consistent with the understanding that juvenile delinquency proceedings are civil in nature, Louisiana courts have reviewed the sufficiency of the evidence in juvenile cases under a hybrid of the *Jackson* standard and the broader manifest-error standard applied in civil cases. *State in Interest of C.D.*, 11-1701 (La. 7/2/12), 93 So.3d 1272, 1276; *State in Interest of W.S.*, 18-0070 (La.

23-KA-83                                    9

App. 4 Cir. 7/5/18), 250 So.3d 1060, 1063; *State in Interest of M.B.*, 16-0819 (La. App. 4 Cir. 4/19/17), 217 So.3d 555, 562.  Thus, an appellate court reviews both the facts and law, specifically, the trial court's factual findings, for clear or manifest error, to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.  *State in Interest of C.D.*, 93 So.3d at 1276; *State in Interest of C.M.*, 13-128 (La. App. 5 Cir. 10/30/13), 128 So.3d 1118, 1125, *writ denied*, 13-2796 (La. 5/30/14), 140 So.3d 1172.

Although appellate review of juvenile cases extends to law and fact, the juvenile court judge observes the conduct and demeanor of the witnesses and is in a better position to determine credibility and weigh the evidence.  *State in Interest of D.S.*, 11-416 (La. App. 5 Cir. 12/28/11), 83 So.3d 1131, 1136.  Thus, the appellate court should afford great deference to the judge's findings of fact and to the judge's determination of witness credibility and weight to be given their testimonies.  *Id.*

In the instant case, L.L. was adjudicated delinquent for first degree rape in violation of La. R.S. 14:42(A)(4).  As applied to this case, the statute provides that first degree rape is a rape committed where the oral or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is under the age of thirteen years old.

At the time of the subject incident, B.S. was six years old and L.L. was fourteen years old.  B.S.'s testimony and her recorded interview provided that L.L. licked her vagina and inserted his penis into her vagina.  The judge found the victim to be credible.  The judge acknowledged that both her testimony at trial and in her recorded interview were substantially similar.  The judge also provided that B.S.'s demeanor indicated that she was upset and was not being rewarded for testifying.  Sergeant Danna testified that in presenting B.S. with a picture of L.L. for identification, she turned her head, shoved the picture away, and became

tearful. Testimony at trial appears to refute L.L.'s self-serving testimony that he did not interact with B.S. and that he cleaned fish with his uncle the entire time. The judge further voiced disbelief that L.L. did not go inside the camp.

In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support the adjudication of delinquency of first degree rape. Further, even under the broader, civil standard of review, we find no clear error by the trial court in its adjudication on this count. Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

### *Lifetime sex offender registration and notification requirements*

In this assignment of error, the juvenile asserts that the lifetime sex offender registration and notification imposed on him is punitive in nature, and that in imposing such a penalty, he was denied his right to be tried by a jury. He contends that the lifetime ramifications of the sex offender registration set it apart from all other juvenile delinquency proceedings. The juvenile states that this Court should conclude that La. R.S. 15:542, *et seq.*[7], is unconstitutional to the extent that it imposes registration and notification requirements upon a juvenile adjudicated delinquent beyond the maximum period of time in which the juvenile can be ordered to serve. He concludes that the lifetime sex offender registration and notification requirements result in an unconstitutionally excessive disposition.

Statutes are presumed to be constitutional, and the party challenging the validity of the statute bears the burden of proving that it is unconstitutional. *Gonzalez*, 173 So.3d at 1237. Accordingly, as a result of this presumption, if a party wishes to challenge the constitutionality of a statute, the party must do so

---

[7] Louisiana Children's Code art. 884.1(A)(1) provides that when a child is adjudicated delinquent for first degree rape as defined in La. R.S. 14:42, the court shall provide him with written notice of the requirements for registration as a sex offender.

properly. *State v. Overstreet*, 12-1854 (La. 3/19/13), 111 So.3d 308, 314. While there is no single procedure for attacking the constitutionality of a statute, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. *State v. Napoleon*, 12-749 (La. App. 5 Cir. 5/16/13), 119 So.3d 238, 245.

A party contesting the constitutionality of a statute has a three-tiered burden: 1) the presentation must be made in the trial court; 2) the claim of unconstitutionality must be specially pleaded; and 3) the grounds for the claim must be particularized. *State v. Wise*, 14-378 (La. App. 5 Cir. 10/15/14), 182 So.3d 63, 78, *writ denied*, 14-2406 (La. 9/18/15), 178 So.3d 143. The constitutionality of a statute cannot be raised for the first time on appeal. An attack upon the constitutionality of a statute must first be presented in the trial court. *State v. Borden*, 07-396 (La. App. 5 Cir. 5/27/08), 986 So.2d 158, 169, *writ denied*, 08-1528 (La. 3/4/09), 3 So.3d 470.

Here, there is nothing in the record that indicates the juvenile challenged the constitutionality of the statute that required the sex offender registration in the trial court. Accordingly, to the extent that the juvenile challenges the constitutionality of La. R.S. 15:542, that argument is procedurally barred as it cannot be raised for the first time on appeal. *See State v. Thornton*, 17-470 (La. App. 5 Cir. 3/14/18), 242 So.3d 799, 804.

Nevertheless, we find that the disposition imposed is that called for by the statute. La. Ch.C. art. 897.1(B) states in pertinent part that after a juvenile is adjudicated delinquent for first degree rape, the court shall commit the child who is fourteen years or older at the time of the commission of the offense to the custody of the Department of Public Safety and Corrections to be confined in secure placement until the child attains the age of twenty-one years. Additionally, La. R.S. 15:542(A)(3) provides in pertinent part that any juvenile who has attained the

age of fourteen years at the time of commission of the offense and who has been adjudicated delinquent based upon the perpetration of a first degree rape must register as a sex offender. La. R.S. 15:544(B)(2) explains that a juvenile adjudicated for an offense enumerated in La. R.S. 15:542(A)(3) must register for the duration of his lifetime. Accordingly, this assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent.[8] La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The trial court adjudicated the juvenile delinquent of first degree rape. However, we find that in imposing the disposition, the judge failed to order that the disposition was without the benefit of probation or suspension of imposition or execution of sentence as required in La. Ch.C. art. 897.1(B).

However, the restriction of probation and suspension is mandatory and the trial court is without discretion in its imposition. Accordingly, we remand this matter for correction of the disposition to provide that the juvenile's confinement is to be served without the benefit of probation or suspension of sentence. *See State in Interest of D.S.*, 83 So.3d at 1140.

Additionally, the juvenile court failed to advise the juvenile of the two-year prescriptive period for seeking post-conviction relief as mandated by La. C.Cr.P. art. 930.8. If a trial court fails to advise the juvenile, then the appellate court may correct this error by informing the juvenile of the applicable prescriptive period for post-conviction relief. *See State in Interest of T.W.*, 15-262 (La. App. 5 Cir. 9/23/15), 175 So.3d 504, 513. Thus, by way of this opinion, we notify the juvenile

---

[8] This Court has determined that in juvenile cases, La. C.Cr.P. art. 920 mandates an errors patent review whether or not defense counsel asked for it. *State in Interest of D.S.*, 83 So.3d at 1139.

that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of adjudication and disposition have become final under the provisions of La. C.Cr.P. arts. 914 or 922.[9]  *Id.*

## DECREE

For the foregoing reasons, the juvenile's adjudication and disposition are affirmed, and the matter is remanded for correction of the disposition to provide that the juvenile's confinement is to be served without the benefit of probation or suspension of sentence.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**

---

[9] It is noted that in order to file an application for post-conviction relief, the petitioner must be in custody.  *See* La. C.Cr.P. art. 924(1).  The juvenile turns twenty-one and will be discharged on July 31, 2023.

23-KA-83                                         14

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 21, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-83

**E-NOTIFIED**
JUVENILE COURT (CLERK)
HONORABLE AMANDA L. CALOGERO (DISTRICT JUDGE)
AMANDA L. CALOGERO (APPELLEE)          DOUGLAS E. RUSHTON, JR. (APPELLEE)          ELIZABETH B. CURREN (APPELLEE)
THOMAS J. BUTLER (APPELLEE)            KATHERINE M. FRANKS (APPELLANT)

**MAILED**
ASHTON ROBINSON (APPELLEE)            HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                       (APPELLEE)
1546 GRETNA BOULEVARD                 DISTRICT ATTORNEY
HARVEY, LA 70058                      TWENTY-FOURTH JUDICIAL DISTRICT
                                      200 DERBIGNY STREET
                                      GRETNA, LA 70053